# 22-2544-CV

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



MATTHEW ARACICH,

*Plaintiff-Appellant,*

*v.*

THE BOARD OF TRUSTEES OF THE EMPLOYEE BENEFIT FUNDS OF HEAT AND FROST INSULATORS LOCAL 12, THE EMPLOYEE BENEFIT FUNDS OF HEAT AND FROST INSULATORS LOCAL 12, THE BOARD OF TRUSTEES OF THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE BOARD OF TRUSTEES OF THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, AL WASSELL, IN HIS CAPACITY AS FUND MANAGER OF THE EMPLOYEE

*(Caption Continued on the Reverse)*

_____

*On Appeal from the United States District Court*
*for the Southern District of New York*

---

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

TRIVELLA & FORTE, LLP
*Attorneys for Plaintiff-Appellant*
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
914-949-9075

BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12, JOHN DOES 1-10, WHOSE IDENTITIES ARE CURRENTLY UNKNOWN, CONSTITUTING THE TRUSTEES, PLAN ADMINISTRATORS OR FIDUCIARIES OF THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12 AND THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 AND THE HEAT AND FROST INS,

*Defendants-Appellees.*

## **FRAP 26.1 STATEMENT**

Not applicable.

# TABLE OF CONTENTS

**Page**

FRAP 26.1 STATEMENT ..................................................................i

TABLE OF AUTHORITIES ........................................................... iii

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............3

STATEMENT OF THE CASE............................................................4

    Facts Relevant to the Issues Submitted for Review..........................4

    Relevant Procedural History, Judge, Disposition,
    Decision and Rulings Presented for Review.....................................6

SUMMARY OF THE ARGUMENT ...................................................7

LEGAL ARGUMENT.......................................................................8

    Standard of Review .......................................................................8

    Mr. Aracich Plausibly Alleged his Entitlement to Retirement and
    Health Retirement Benefits Under the Terms of the Pension and
    Welfare Funds of Heat and Frost Insulators Local 12 Plans and
    Fiduciary Breach, Section 510, and Breach of Contract Causes
    of Action.......................................................................................9

    The Pension Fund of Heat and Frost Insulators Local 12 Board
    of Trustees' Denial of Mr. Aracich's Pension Was Arbitrary and
    Capricious, the Trustees Unreasonably Concluded Mr. Aracich
    Did Not Retire, Mr. Aracich Meets the Definition of "Retired"
    Under the Pension Fund of Heat and Frost Insulators Local 12
    Plan..............................................................................................9

CONCLUSION ..............................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Allaire Corp. v. Okumus,
    433 F.3d 248, 249-50 (2d Cir. 2006) ...................................................8

Cent. Laborers' Pension Fund v. Heinz,
    541 U.S. 739, 741, 124 S. Ct. 2230,
    2234, 159 L. Ed. 2d 46 (2004) ...........................................18, 19, 24

Chambers v. Time Warner, Inc.,
    282 F.3d 147, 152 (2d Cir. 2002)......................................................8

Custer v. Pan Am. Life Ins. Co.,
    12 F.3d 410, 421 (4th Cir.1993)......................................................21

Fink v. Time Warner Cable,
    714 F.3d 739, 740-41 (2d Cir. 2013) ................................................9

Gregory v. Daly,
    243 F.3d 687, 691 (2d Cir.2001)......................................................8

Kassner v. 2nd Ave. Delicatessen Inc.,
    496 F.3d 229, 237 (2d Cir. 2007)...................................................14

Mantikas v. Kellogg Co.,
    910 F.3d 633, 636 (2d Cir. 2018)......................................................9

Metzgar v. U.A. Plumbers & Steamfitters Loc.
    No. 22 Pension Fund,
    No. 13-CV-85V(F), 2019 WL 1428083, at *4
    (W.D.N.Y. Mar. 28, 2019),report and recommendation
    adopted, No. 13-CV-85 (JLS) (LGF), 2020 WL 5939202
    (W.D.N.Y. Oct. 7, 2020), aff'd, No. 20-3791, 2022
    WL 610340 (2d Cir. Mar. 2, 2022)..................................................20

O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.,
    37 F.3d 55, 59 (2d Cir. 1994).........................................................16

Park Ave. Aesthetic Surgery, P.C. v. Empire Blue
    Cross Blue Shield,
    No. 19-CV-9761 (JGK), 2021 WL 665045,
    at *5 (S.D.N.Y. Feb. 19, 2021) ............................................................................2

Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Tr.,
    920 F.2d 651, 652 (10th Cir. 1990) ....................................................................22

Rojas v. Cigna Health & Life Ins. Co.,
    793 F.3d 253, 256 (2d Cir. 2015).........................................................................2

Scutti Enters., LLC. v. Park Place Entm't. Corp.,
    322 F.3d 211, 214 (2d Cir.2003)..........................................................................8

Soto v. Disney Severance Pay Plan,
    26 F.4th 114, 121 (2d Cir. 2022)........................................................................16

Sweet v. Sheahan,
    235 F.3d 80, 83 (2d Cir.2000)..............................................................................8

Teamsters Loc. Union No. 705 v. Burlington N.
    Santa Fe, LLC,
    741 F.3d 819, 821, 823, 827 (7th Cir. 2014) ....................................................22

Statutes

26 U.S.C. § 401 ...............................................................................................16, 17, 25

28 U.S.C. §1331 .........................................................................................................2

29 U.S.C. § 1104 ......................................................................................................22

29 U.S.C. § 1132 ...............................................................................................2, 6, 22

29 U.S.C. § 1140 ......................................................................................................21

29 U.S.C.A. § 1104 ..................................................................................................23

ERISA Section 510 ...........................................................................................passim

IRC 411(d)(6)...........................................................................................................29

iv

## JURISDICTIONAL STATEMENT

Plaintiff/Appellant Matthew Aracich appeals, via Notice of Appeal filed October 6, 2022 (SPA 18),[1] to this United States Court of Appeals for the Second Circuit from the final Judgment filed September 20, 2022 (SPA-17) and Court's Opinion and Order filed September 20, 2022 (SPA-1) and each part thereof, which Order granted Defendants/Appellees' the Board of Trustees of the Employee Benefit Funds of Heat & Frost Insulators Local 12; the Employee Benefit Funds of Heat & Frost Insulators Local 12; the Board of Trustees of the Pension Fund of Heat and Frost Insulators Local 12 Plan; the Pension Fund of Heat and Frost Insulators Local 12 Plan; the Board of Trustees of the Heat and Frost Insulators Local 12 Welfare Fund; the Heat and Frost Insulators Local 12 Welfare Fund (hereinafter collectively "Funds"); Al Wassell, in his capacity as Fund Manager of the Employee Benefit Funds of Heat & Frost Insulators Local 12; and John Does 1-10, whose identities are currently unknown, constituting the trustees, plan administrators or fiduciaries of the Funds' motion, pursuant to Fed. R. Civ. Pro. 12(b)(6), to dismiss his Complaint (A-4.1-4.24).[2] The Funds are Taft-Hart employee benefit funds providing pension and health benefits to participants and governed by the Employee Retirement Income Security Act of 1974("ERISA").

---

[1] References to "SPA-" refer to the Special Appendix.
[2] References to "A-" refer to the Appendix.

The District Court's subject matter jurisdiction basis is ERISA §§502(a) (1) (B), 502(a) (3) and 510, as amended, 29 U.S.C. §§1132, and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185. The relevant facts establishing subject matter jurisdiction are in the Complaint (A-4.1-4.24), alleging the Funds' improper denial of Mr. Aracich's Funds' benefits, which denial constitutes a breach of contract and fiduciary duty. The Court has federal question jurisdiction under 28 U.S.C. §1331 and 29 U.S.C. §1132 in that Plaintiff alleges a violation of ERISA, 29 U.S.C. §§ 1001-1461. For the purposes of the motion the facts are as stated in the Complaint. Section 502(a)(1)(B) of ERISA authorizes a plan "participant" and "beneficiary" to a bring civil action "to recover benefits" improperly withheld or otherwise to enforce "rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *See Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 256 (2d Cir. 2015). *Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19-CV-9761 (JGK), 2021 WL 665045, at \*5 (S.D.N.Y. Feb. 19, 2021).

The basis for this Court of Appeals' jurisdiction is 28 U.S.C. § 1291, since this is an appeal of a final order and judgment of the United States District Court of the Southern District of New York dismissing all the causes of action in the Complaint and disposing of all parties' claims.

The filing dates establishing the timeliness of the appeal are the final Judgment filed September 20, 2022 (SPA-17) and the Notice of Appeal filed October 6, 2022 (SPA-18).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether Mr. Aracich plausibly alleged in his Complaint (A-4.1-4.24) his entitlement to retirement and health retirement benefits under the terms of the Funds' plan documents, and fiduciary breach, ERISA Section 510 cause of action, and ERISA breach of contract by the Funds' trustees and administrator in interfering with his benefit entitlement and, if so, what shall be the remedy.

2.      Whether the District Court committed reversible error in granting the Defendants' motion to dismiss (A-5) and, if so, what shall be the remedy.

3

## STATEMENT OF THE CASE

### *Facts Relevant to the Issues Submitted for Review*

Appellant Matthew Aracich is a third-generation heat-and-frost insulator in the labor movement. He was elected president of the Building and Construction Trades Council of Nassau & Suffolk Counties, AFL-CIO. He retired from his position as President at the Heat and Frost Insulators Local 12 on Friday February 26, 2021. Mr. Aracich sent a February 26, 2021 letter to the Defendants, via their Funds Manager Defendant Al Wassell, notifying the Defendants "I will be retiring from Local Union 12 effective 4 P.M. today, Friday February 26, 2021" and demanding his pension and health benefits from the Pension Fund of Heat and Frost Insulators Local 12 Plan and Welfare Fund of Heat and Frost Insulators Local 12 benefits. Mr. Aracich was a participant in the Funds and 60 years old as of February 26, 2021, with over 30 years of service credits. Mr. Aracich as of February 26, 2021 meets the age and service requirements for early retirement pension benefits under the Pension Fund of Heat and Frost Insulators Local 12 Plan and retirement health benefits under the Welfare Fund of Heat and Frost Insulators Local 12. Mr. Aracich also tendered remittance checks to the Funds for his health coverage for the months of November 2020 through February 2021 pursuant to a participation agreement (A-276) between the Defendants' Funds and his employer, the Building and

4

Construction Trades Council of Nassau and Suffolk Counties, AFL-CIO.[3] This participation agreement expired prior to his retirement. When Mr. Aracich applied for his pension on February 26, 2021 he was not employed by an employer with an obligation to contribute to the Pension Fund of Heat and Frost Insulators Local 12 Plan or Welfare Fund of Heat and Frost Insulators Local 12 or with a collective bargaining agreement with International Association of Heat and Frost Insulators Local No. 12.[4] Mr. Aracich alleges in the Complaint[5] as of February 26, 2021 he was "retired," as that term is defined by the Pension Fund of Heat and Frost Insulators Local 12 Plan,[6] since he no longer worked for a "Contributing Employer" or "Employer" and therefore was not in and had separated from "Covered Employment" as those terms are defined in the Plan,[7] since as of February 26, 2021 he did not work for an employer with a Pension Fund of Heat and Frost Insulators Local 12 Plan or Welfare Fund of Heat and Frost Insulators Local 12 contribution obligation. Pension Plan Document, § 6.8 states "to be considered retired, a Participant must be separated from Covered Employment."[8] Despite being retired and meeting the age and service requirements of the Pension Fund of Heat and Frost

---

[3] Complaint, ¶ 12. A-4.6.
[4] Complaint, ¶ 22. A-4.9
[5] Complaint, ¶ 39. A-4.12
[6] A copy of the Pension Fund of Heat and Frost Insulators Local 12 Plan document, hereinafter "Pension Plan document," is at (A-199).
[7] Complaint, ¶¶ 19-21. A-4.9. Pension Plan Document, §§1.10, 1.11. A-205.
[8] A-239.

Insulators Local Plan for an early retirement option, the Pension Fund of Heat and Frost Insulators Local 12 Plan and Welfare Fund of Heat and Frost Insulators Local 12 Board of Trustees[9] refused to provide Mr. Aracich with his early retirement pension and retirement health benefits and denied his demand and appeal for those benefits. Mr. Aracich now sues for those benefits and damages pursuant to 29 U.S.C. §1132, damages for breach of contract, breach of fiduciary duty, and violation of ERISA Section 510. Mr. Aracich also sues for a declaratory judgment he is entitled to these pension and retirement health benefits.

### *Relevant Procedural History, Judge, Disposition, Decision and Rulings Presented for Review*

Mr. Aracich filed his Complaint on November 19, 2021. A-4.1-4.24. The Defendants moved pursuant to Fed. R. Civ. Pro. 12(b)(6) to dismiss the Complaint on January 24, 2022. A-5. There was no oral argument or transcript on the motion. Judge Vincent Briccetti issued the District Court's Opinion and Order filed September 20, 2022 (SPA-1) and the final Judgment filed September 20, 2022 (SPA-17) dismissing the causes of action in the Complaint. Mr. Aracich filed a Notice of Appeal (A-368) on October 6, 2022.

---

[9] Hereinafter the Board of Trustees of the Funds shall be collectively referred to as the "Trustees."

6

## SUMMARY OF THE ARGUMENT

This Court should reverse the District Court's Opinion and Order filed September 20, 2022 (SPA-1) and Judgment filed September 20, 2022 (SPA-17) which granted the Funds' motion to dismiss the Complaint, since the Complaint plausibly alleged causes of action by Mr. Aracich against the Funds for ERISA breach of contract, breach of fiduciary duty, violation of ERISA Section 510, and a declaratory judgment that Mr. Aracich is entitled payment of his pension and health retirement benefit. The Complaint plausibly alleged that at the time Mr. Aracich retired he satisfied the age and service requirements and the definition of "retire" in the Local 12 Pension Plan because when he retired he was not working in "Covered Employment" which is defined in the pension plan document unambiguously to be work for an employer obligated to contribute to the Funds. The Funds' denial of Mr. Aracich's vested pension and health benefits violated ERISA's Section 204 "anti-cutback" rule and the plan documents. The District Court applied the incorrect standard on a motion to dismiss in failing to confine its inquiry to the four corners of the Complaint, in applying an "arbitrary and capricious" standard of review instead of a *de novo* review to the Trustees' decision to deny Mr. Aracich his benefits, and in determining the Plan term "retire" to be ambiguous when it is unambiguous as applied to Mr. Aracich, since Mr. Aracich at retirement was not performing Covered Employment as that term is defined by the Pension Plan

7

documents. The District Court also committed reversible error by dismissing an ERISA breach of contract cause of action on grounds of ERISA preemption. The District Court also committed reversible error when, on a motion to dismiss with no discovery, the District Court considered issues relating to the impact of granting Mr. Aracich's pension on the tax qualification of the pension plan. The District Court should have, respectfully, denied the Funds' motion and allowed the litigation to proceed to the discovery stage.

## **LEGAL ARGUMENT**

### ***Standard of Review***

For each issue "we review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001). 'Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.' *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000)." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Scutti Enters., LLC. v. Park Place Entm't. Corp.*, 322 F.3d 211, 214 (2d Cir.2003)." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).

*See also Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). *Mantikas*

*v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).

***Mr. Aracich Plausibly Alleged his Entitlement to Retirement and Health Retirement Benefits Under the Terms of the Pension and Welfare Funds of Heat and Frost Insulators Local 12 Plans and Fiduciary Breach, Section 510, and <u>Breach of Contract Causes of Action</u>***

**The Pension Fund of Heat and Frost Insulators Local 12 Board of Trustees' Denial of Mr. Aracich's Pension Was Arbitrary and Capricious, the Trustees Unreasonably Concluded Mr. Aracich Did Not Retire, Mr. Aracich Meets the Definition of "Retired" Under the Pension Fund of Heat and Frost Insulators <u>Local 12 Plan</u>**

The Complaint plausibly alleges,[10] and there is no dispute, that Section 3.3 of

the Pension Fund of Heat and Frost Insulators Local 12 plan document establishes a

monthly amount of Pension benefit "for Participants who leave Covered

Employment." "Covered Employment" is defined at Section 1.10 of the Pension

Fund of Heat and Frost Insulators Local 12 plan (hereinafter the "Plan") (A-205) as:

> Effective November 5th, 2007, "Covered Employment" means employment of an Employee by an Employer including such employment prior to the Contribution Period. "Covered Employment" shall also be understood to include full-time service as an officer or employee of the Union, the Fund, other Heat and Frost Insulators Funds or a state or local central labor council provided that contributions are made to the Fund with respect to such service equal in rate to the rate of contributions contemporaneously in effect for participating employers and employees.

> Section 1.11 of the Plan (A-205), defining the term "Employee," reads:

---

[10] Complaint, ¶¶ 18-30. A-4.9-4.11.

9

> Effective November 5th, 2007, "Employee" means any person employed by an Employer in a bargaining unit for which the Employer is obligated by its Agreement with the Union to contribute to the Fund. It shall also include employees of the Union, the Fund, other Heat and Frost Insulators Funds, and a state or local central labor council provided the contributions for such employees are made in accordance with the Fund.

Section 1.8 of the Plan (A-204), defining the term "Contributing Employer" or "Employer," reads, in relevant part:

> Effective November 5th 2007 "Contributing Employer" or "Employer" means any employer obligated by its Collective Bargaining Agreement with the Union to contribute to the Fund or an Employer signatory to any other agreement requiring contributions to the fund as established by the trustees that agrees to be bound by the Trust Agreement. It shall also include the Union, the Fund, other Heat and Frost Insulators Funds or a state or local central labor council if contributions for its employees are made in accordance with this Article …

When Mr. Aracich retired and afterwards Mr. Aracich's employer, Building and Construction Trades Council of Nassau and Suffolk Counties, AFL-CIO, was not obligated to contribute to the Pension Fund of Heat and Frost Insulators Local 12 and does not have a collective bargaining agreement with International Association of Heat and Frost Insulators Local No. 12. Complaint, ¶ 22(A-4.9). As of Mr. Aracich's February 26, 2021 date of retirement, Mr. Aracich has not been working for an "Employer" or "Contributing Employer" as those terms are defined by the Pension Fund of Heat and Frost Insulators Local 12 and Welfare Fund of Heat and Frost Insulators Local 12, since his employer has no contribution obligation to the Funds. Complaint, ¶ 23(A-4.10). As of Mr. Aracich's date of retirement Mr.

Aracich has not been working in "Covered Employment" as that term is defined by the Pension Fund of Heat and Frost Insulators Local 12 because "Covered Employment" requires employment by an Employer with a contribution obligation to the Funds. Complaint, ¶ 24(A-4.10).

The Complaint plausibly alleges, and it is not in dispute, that Section 6.8 of the Pension Plan (A-239) reads, in relevant part:

> To be considered retired, a Participant must have separated from Covered Employment. However the Plan's rules as to what constitutes retirement (and separation from Covered Employment for purposes of retirement) differ for periods before attainment of Normal Retirement Age and after attainment of Normal Retirement Age, as described in Section 6.9(a) and (b).

Section 6.9(a) of the Plan reads(A-239-240), in relevant part:

> Before Normal Retirement Age
>
> (i)    the monthly benefit shall be suspended for any month in which the participant is employed in Disqualifying Employment before he has attained Normal Retirement Age. "Disqualifying Employment," for the period before Normal Retirement Age, is any employment covered by any collective bargaining agreement with the Union.

The Complaint plausibly alleges, and there is no dispute, that the Pension Plan Document provides a participant may retire under the Pension Plan's "Early Retirement Pension" if the participant has reached age 55 and has at least 10 years Pension Credit. *See* Pension Plan Document, § 3.4 (A-212). The Complaint plausibly alleges, and there is no dispute, that the Pension Plan Document provides to be

11

considered "retired" under the Pension Fund of Heat and Frost Insulators Local 12 Plan and Welfare Fund of Heat and Frost Insulators Local 12, in addition to meeting the age and service requirements, Mr. Aracich "must have separated from Covered Employment". *See* Pension Plan Document, §6.8(A-239). The Complaint plausibly alleges, and there is no dispute, that the Pension Plan Document defines "Covered Employment" as employment with an employer with a contribution obligation to the Funds. *See* Pension Plan Document, § 1.11(A-205).

Page 4 of the Summary Plan Description of the Asbestos Workers International Association of Heat and Frost Insulators Local No. 12 Fund (A-49) provides, in relevant part:

> Retirees
> Active members who continue to work until age 60 and then retire (as that term is defined in the Asbesto's Workers Local 12 Pension plan) while eligible for benefits, will continue to be eligible for Welfare Fund benefits, excluding the Loss of Pay Supplement Benefits, until they turn age 65…

Pages 8-9 of the Pension Fund of Heat and Frost Insulators Local 12 Plan Summary Plan Description (A-170-171) read, in relevant part:

> "Covered Employment" means employment by an Employer who must contribute on your behalf to the Pension Fund… You are eligible to retire on an Early Retirement Pension if you are have (sic.) reached age 55 and have earned at least 10 Pension Credits.

The Complaint plausibly alleges (Complaint, ¶ 27, (A-4.10)) and there is no dispute that since February 26, 2021 Mr. Aracich's employment has not been covered by

12

any collective bargaining agreement or other document requiring contributions to the Funds. The Complaint plausibly alleges (Complaint, ¶ 12(A-4.6)) Mr. Aracich has reached age 55 and earned at least 10 Pension Credits (he has 30), thereby accruing his vested benefits under these plans. Since Mr. Aracich's employer is not required to contribute to the Pension Fund of Heat and Frost Insulators Local 12 for Mr. Aracich's service to his employer or otherwise, Mr. Aracich, as of February 26, 2021, is not engaged in "Covered Employment" and is "retired" as those terms are defined by the Pension Fund of Heat and Frost Insulators Local 12 Fund. The Trustees admit as of February 26, 2021 Mr. Aracich is no longer working in "Covered Employment." *See* May 21, 2021 Trustees' denial letter, p. 2 (A-289). The Complaint plausibly alleges the Trustees acted in an arbitrary and capricious fashion and breached their fiduciary duty and contractual obligations to Mr. Aracich when they denied him his pension and retirement health benefits. The Trustees interpreted "Contributing Employer" in an arbitrary and capricious fashion, by interpreting the term as any employer, not solely employers with a present obligation to contribute to the Pension Fund of Heat and Frost Insulators Local 12 Plan. In doing so, the Complaint plausibly alleges the Trustees abused their discretion by misreading the plain language of the Pension Fund of Heat and Frost Insulators Local 12 Plan, resulting in an improper denial of benefits to Mr. Aracich. There is no reasonable reading of the "Contributing Employer" definition that permits a jury or court or

13

trustee to interpret the definition as an employer that is <u>not</u> contributing to the Funds. Since that is how the Trustees interpreted the Plan document, their interpretation and decision was arbitrary and capricious. The plan language and facts in the Complaint allow a plausible inference that the Defendants are liable for the Trustees' misinterpretation of the Pension Fund of Heat and Frost Insulators Local 12 Plan and denial of benefits. A *sine qua non* to the Plan definition of "Covered Employment" is employment by an employer with a contribution obligation to the Funds, there was no plausible reading of the Plan language to reach the conclusion that Mr. Aracich's employment rendered Mr. Aracich ineligible to receive the promised pension.

The District Court committed reversible error, respectfully, because, instead of reviewing the four corners of the Complaint and accepting "as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor" *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), the District Court reviewed other documents and opined as to what "the Trustees based their determination" (9/19/22 Decision, p. 10 (A-360)), an inquiry appropriate for summary judgment or trial but not on this motion to dismiss. This Court of Appeals should, respectfully, reverse the District Court and allow Plaintiff to move the action to the discovery stage to obtain documentation and deposition testimony regarding how the Trustees made their determination, including

investigating trustee bias and whether similarly situated employee participants were treated differently from the Plaintiff regarding benefit applications.

The District Court also committed reversible error in finding the terms "retire" and "separate" are ambiguous (9/19/22 Decision, p. 9 (A-360)) in the context of Mr. Aracich's application for benefits. These terms are not ambiguous as the Complaint plausibly alleges, and it is not in dispute, that when Mr. Aracich applied for his benefits he was not employed in "Covered Employment," because his employer at the time of his application for benefits did not have an obligation to contribute to Funds. There is no reasonable interpretation of Mr. Aracich's employment at the time he applied for benefits other than "separate from Covered Employment." The term "retire" is not ambiguous regarding Mr. Aracich as a *sine qua non* under the plan documents to not "be considered retired" is to be working in "Covered Employment" as that term is defined by the plan documents, and "Covered Employment" unambiguously is defined as an employer with a contribution obligation to the Funds. The Welfare Fund Summary Plan Description at page 22 provides, for individuals under 65 such as Mr. Aracich, "You will lose your pension for any month in which you work in any employment covered by any Collective Bargaining Agreement with the Union". A-184. The Complaint plausibly alleges at time of retirement Mr. Aracich was not working in any employment covered by a collective bargaining agreement.

15

The District Court also, respectfully, committed reversible error when the District Court applied the incorrect "arbitrary and capricious" standard instead of a "*de novo*" standard in evaluating the Funds' decision to deny benefits. "[W]hen an administrator is interpreting unambiguous plan terms, we generally apply a *de novo* standard of review because "unambiguous language leaves no room for the exercise of discretion." *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994)." *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 121 (2d Cir. 2022) (brackets added).

The District Court also committed reversible error when it inferred, without a complete record, any discovery in this action, or joinder of issue, the denial of Mr. Aracich's benefits was based on the Funds' trustees supposed belief that granting the pension benefit could negatively impact the Pension Fund's qualified tax status. Even assuming, *arguendo*, the Trustees believe granting Mr. Aracich his pension negatively impacts the Pension Fund's tax status, this belief is erroneous. 26 U.S.C. § 401 unambiguously states, in relevant part:

> (36) Distributions during working retirement.--
> (A) In general.--A trust forming part of a pension plan shall not be treated as failing to constitute a qualified trust under this section solely because the plan provides that a distribution may be made from such trust to an employee who has attained age 59 ½ and who is not separated from employment at the time of such distribution.

26 U.S.C.A. § 401 (West). This statutory language demonstrates granting Mr. Aracich pay status in the pension plan while he continued to work in non-Covered

Employment does not negatively impact the plan's tax status. The Funds' Trustees had no legitimate reason to believe paying Mr. Aracich a pension and health benefit would jeopardize the Funds' tax status. The Complaint plausibly alleges the Trustees' denial of pension benefits was a breach of the pension plan documentation and their fiduciary duties to act solely in the interest of the participants including Mr. Aracich. Allowing the Trustees to deny vested rights based solely on their subjective, incorrect belief that granting pension benefits may affect the Pension Plan's tax status is not consistent with ERISA and impermissibly allows for arbitrary and capricious trustee conduct. In conducting a *de novo* review this Court can conclude that granting Mr. Aracich's pension application is consistent with 26 U.S.C. §401.

The District Court committed reversible error when it determined "the Trustees' determination that plaintiff did not "retire" is not a Plan amendment" (9/19/22 Order, p. 12, (SPA-12)) and dismissed Plaintiff's Third Cause of Action. The Trustees' interpretation of "retire" to mean retire from non-Covered Employment, when the plan definition of "retire" states "separate from Covered Employment," is a *de facto* amendment to the pension plan which violates Section 204 of ERISA, because it reduces Mr. Aracich's promised benefits based on his reliance on plan documents. To "undercut any such reliance, paying retirement income only if he accepted a substantial curtailment of his opportunity to do the kind of work he knew. We simply do not see how, in any practical sense, this change of

terms could not be viewed as shrinking the value of Heinz's pension rights and reducing his promised benefits." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 745, 124 S. Ct. 2230, 2236, 159 L. Ed. 2d 46 (2004) (affirming Seventh Circuit Court of Appeals holding of violation of "anti-cutback" rule). The Complaint plausibly alleges[11] the Trustees, in the exercise of their discretion in denying Mr. Aracich his pension and retirement health benefits, attempted to amend and modify the "Contributing Employer" plan definition to not contain a requirement for the participant's employer to contribute to the Pension Fund of Heat and Frost Insulators Local 12 Plan or Welfare Fund of Heat and Frost Insulators Local 12, after Mr. Aracich had already vested in his benefits and retired, removing both benefits, thereby violating ERISA's "anti-cutback" rule (29 U.S.C. § 1054(g)) and amending, *de facto*, the Pension and Welfare Fund plans. The Funds can't dodge this rule by accomplishing the amendment via a Board of Trustees' denial of Mr. Aracich's pension and retirement health benefits instead of issuing a formal written plan amendment. As the Supreme Court opined:

> The "anti-cutback" rule of the Employee Retirement Income Security Act of 1974 (ERISA) prohibits any amendment of a pension plan that would reduce a participant's "accrued benefit." 88 Stat. 858, 29 U.S.C. § 1054(g). The question is whether the rule prohibits an amendment expanding the categories of postretirement employment that trigger suspension of payment of early retirement benefits already accrued. We hold such an amendment prohibited.

---

[11] Complaint, ¶ 58. A-4.18.

*Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 741, 124 S. Ct. 2230, 2234, 159 L. Ed. 2d 46 (2004). The *Heinz* case is instructive. Mr. Heinz retired from the construction industry after accruing enough pension credits to qualify for early retirement payments. Mr. Heinz's plan prohibited such beneficiaries from certain "disqualifying employment" after they retire, suspending monthly payments until they stop the forbidden work. When Mr. Heinz retired, the Plan defined "disqualifying employment" to include a job as a construction worker but not as a supervisor in the same industry, the job Heinz took. After he retired, the Plan expanded its definition to include any construction industry job and stopped Heinz's payments when he did not leave his supervisor's job. Mr. Heinz sued to recover the suspended benefits, claiming that the suspension violated the "anti-cutback" rule of the Employee Retirement Income Security Act of 1974 (ERISA), which prohibits any pension plan amendment that would reduce a participant's "accrued benefit," ERISA § 204(g), 29 U.S.C. § 1054(g). The District Court granted the Plan judgment on the pleadings, but the Seventh Circuit Court of Appeals reversed, holding that imposing new conditions on rights to benefits already accrued violates the anti-cutback rule. The Supreme Court affirmed the Seventh Circuit. Here Mr. Aracich has plausibly alleged a 29 U.S.C. § 1054(g) violation, asserting after he vested his accrued early retirement pension and health benefits based on a retirement plan

definition that only included cessation of Covered Employment, the Trustees expanded the definition of "retired" to include cessation of any employment.

The District Court's reliance (9/19/22 Order, p. 10, (SPA-10)) on *Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*, No. 13-CV-85V(F), 2019 WL 1428083, at *4 (W.D.N.Y. Mar. 28, 2019), *report and recommendation adopted*, No. 13-CV-85 (JLS) (LGF), 2020 WL 5939202 (W.D.N.Y. Oct. 7, 2020), *aff'd*, No. 20-3791, 2022 WL 610340 (2d Cir. Mar. 2, 2022) is misplaced, since the facts in *Metzgar* are inapposite. In *Metzgar* the District Court decided a motion for summary judgment, not a Fed. R. Civ. Pro. 12(b) motion to dismiss. In *Metzgar* there was a written plan amendment requiring pension fund participants to cease all employment to continue to receive a pension distribution. There is no evidence in the instant action the Funds executed a written amendment of the pension plan to require participants cease all employment prior to retiring or receiving a pension payment. Unlike in *Metzgar*, where the terms "retire" or "retirement" were not defined by the Plan (*see Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*, 2019 WL 1428083, at *9 (cleaned up)), the Local 12 Pension Plan unambiguously defined "retirement" and "retire" as "separated from Covered Employment" (Pension Fund Plan, §6.8, (A-239)). The Complaint plausibly alleges Mr. Aracich was separated from Covered Employment, as it alleges when he retired his employer had no contribution obligation to the Funds. Complaint, ¶ 27 (A-4.10).

The District Court committed reversible error when it held "plaintiff fails to plead the requisite intent under Section 510 of ERISA or an "adverse employment action."" 9/19/22 Order, p. 11, SPA-11. Mr. Aracich satisfied Fed. R. Civ. Pro. 8's pleading requirements for a Section 510 cause of action by alleging:

> The Defendants engaged in a scheme to intentionally interfere with the contractual and vesting rights and benefit entitlements of the Plaintiff in violation of Section 510 of ERISA, 29 U.S.C. by, inter alia, refusing to pay the Plaintiff the benefits to which he is entitled pursuant to the Pension Fund of Heat and Frost Insulators Local 12, the Heat and Frost Insulators Local 12 Welfare Fund and other benefit funds, by failing to provide the notice required under ERISA for the amendment to the Pension plan, by disparately treating Plaintiff from other similarly situated Pension Fund of Heat and Frost Insulators Local 12 pension and Heat and Frost Insulators Local 12 Welfare Fund participants who received their pension and retiree health entitlements and benefits, and by otherwise inducing representatives of the Pension Fund of Heat and Frost Insulators Local 12 and Heat and Frost Insulators Local 12 Welfare Fund and their counsel and representatives to interfere with the contractual and vesting rights of the Plaintiff …

Complaint, ¶ 48, (A-4.15). ERISA Section 510 does not only apply in the employment context. "[L]iability under this statute is not limited to employers … Section 510 makes it unlawful to take certain adverse actions against the participants in an employee benefits plan for the purpose of interfering with their attainment of benefits under the plan. 29 U.S.C. § 1140… It restrains "any person," not just employers. *See* 29 U.S.C. § 1140; *see also Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 421 (4th Cir.1993). "Person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate,

unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9)." *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 821, 823, 827 (7th Cir. 2014)(brackets added). Here Mr. Aracich has plausibly alleged a cause of action under ERISA Section 510[12] by alleging the Defendants engaged in a scheme motivated by their desire to deny Mr. Aracich his pension and retirement health benefits.

The District Court committed reversible error when it incorrectly interpreted the fourth cause of action as a state breach of contract cause of action and dismissed the cause of action on preemption grounds. 9/19/22 Order, pp. 15-16, SPA-15-16. The fourth cause of action is a federal cause of action based on an ERISA breach of contract claim, 29 U.S.C. § 1132, and therefore the District Court should not have dismissed this cause of action since it is a "breach of contract against the plan, 29 U.S.C. § 1132(a)(1)(B)." *Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Tr.*, 920 F.2d 651, 652 (10th Cir. 1990).

The District Court committed reversible error when it dismissed the fifth cause of action for breach of fiduciary duty and held "plaintiff has not plausibly alleged defendants breached their duties." 9/19/22 Order, p. 14, SPA-14. Mr. Aracich plausibly alleged a breach of fiduciary duty. 29 U.S.C. § 1104 provides, in relevant part:

---

[12] Complaint, ¶¶ 48-53. A-4.15-4.18.

**(a) Prudent man standard of care**
**(1)** Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
**(A)** for the exclusive purpose of:
**(i)** providing benefits to participants and their beneficiaries; and
**…**
**(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
**…**
**(D)** in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C.A. § 1104 (West). The Complaint plausibly alleges a claim for breach of fiduciary duty as it alleges the Funds failed to exercise their duties in accordance with the plain meaning of the plan documents and ERISA's disclosure requirements. The Complaint, ¶¶ 3(f), 64 (A-4.3,4.20) plausibly alleges that if the Funds' Trustees created plan documents and represented to Mr. Aracich those plan documents complied with the law and provided him with a pension and retirement health benefit and those representations are false or were not complied with or notice of the Trustees' interpretation of "retired" was not conveyed to Mr. Aracich prior to his benefit accrual and vesting and seeking his retirement benefits, then Mr. Aracich has plausibly alleged a cause of action against the Trustees for breaching their duty to him to exercise prudent man diligence and care and skill under the circumstances in their fiduciary capacity as Trustees of the Pension Fund of Heat and Frost Insulators

Local 12 Plan and Welfare Fund of Heat and Frost Insulators Local 12. The Complaint also plausibly alleges the Trustees have failed to monitor other plan fiduciaries and service providers under the standards set forth in ERISA, by, *inter alia*, creating plan documents and making representations to Mr. Aracich that he would be entitled to an early retirement pension upon reaching the age and service requirements and ceasing Covered Employment and now, after Mr. Aracich has relied on those representations and vested in those benefits, assert he is not entitled to the vested benefits because to pay the benefits results in a potential plan defect.

The District Court committed reversible error when it ignored Mr. Aracich's request for leave to amend the complaint if the Court grants the Funds' motion to dismiss. A-335.

The Supreme Court has held "So far as the IRS regulations are concerned, then, the anti-cutback provision flatly prohibits plans from attaching new conditions to benefits that an employee has already earned." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 747, 124 S. Ct. 2230, 2237, 159 L. Ed. 2d 46 (2004)(granting early retirement benefits to Mr. Heinz when he retired as a construction worker but remained a supervisor in the same industry after retirement). 29 U.S.C. § 411(d)(6)(b)(i) makes clear the anti-cutback rule applies to early retirement benefits. In the instant action Mr. Aracich retired by ceasing work in Covered Employment, as that term is defined by the Plan, with no intent or understanding with any

employer to ever return to Covered Employment, and after having accrued his pension and health retirement benefits. As set forth in *Heinz*, the fact that he continues non-covered work with the same employer does not prevent him from retiring and collecting his early retirement benefits. Code Section 401 does not forbid the issuance or receipt of an early retirement benefit while the participant is still employed, and IRC 411(d)(6) and 29 U.S.C. § 1054(g) mandate that, where, as here, the participant has accrued his benefits at time of retirement the Trustees are mandated to not deny or reduce that accrued benefit.

## <u>CONCLUSION</u>

Taking all of the well-pled allegations of the Complaint as true, and drawing all reasonable inferences in favor of Mr. Aracich, Mr. Aracich has plausibly pled all of the causes of action in the Complaint and this Court should, respectfully, reverse the District Court September 19, 2022 Order (SPA-1) and Judgment filed September 20, 2022 (SPA-17), deny the Funds' motion to dismiss, and allow the litigation to proceed to the discovery stage, together with such other relief the Court deems proper.

Dated:      December 5, 2022
             White Plains, New York

                      Respectfully submitted,

                      TRIVELLA & FORTE, LLP

                      */s/ Christopher Smith*_____
                      *Attorneys for Appellant/Plaintiff*
                      *Matthew Aracich*
                      1311 Mamaroneck Avenue, Ste. 170
                      White Plains, New York 10605
                      (914) 949-9075
                      111csmith111@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to FRAP 32(g) Christopher Smith, an attorney in good standing to practice before this Court, certifies that this Appellant's Brief contains no more than 13,000 words and otherwise complies with the type-volume limitations in FRAP 32(a)(7). The number of words in this brief, excluding cover page; disclosure statement; table of contents; table of citations; statement regarding oral argument; addendum containing statutes, rules, or regulations; certificates of counsel; signature block; and proof of service; is 6,113.

TRIVELLA & FORTE, LLP

*/s/ Christopher Smith*_____
*Attorneys for Appellant/Plaintiff*
*Matthew Aracich*
1311 Mamaroneck Avenue, Ste. 170
White Plains, New York 10605
(914) 949-9075
111csmith111@gmail.com

# **CERTIFICATE OF SERVICE**

On December 5, 2022 the Appellant's Brief was served on Appellees' counsel via ECF.

TRIVELLA & FORTE, LLP

*/s/ Christopher Smith*_____
*Attorneys for Appellant/Plaintiff*
*Matthew Aracich*
1311 Mamaroneck Avenue, Ste. 170
White Plains, New York 10605
(914) 949-9075
111csmith111@gmail.com

SPECIAL APPENDIX

## **Table of Contents**

**Page**

Opinion and Order of the Honorable Vincent L. Briccetti,
    dated September 19, 2022, Appealed From ................................... SPA1

Judgment of the United States District Court of the Southern
    District of New York, entered September 20, 2022,
        Appealed From ............................................................................... SPA17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MATTHEW ARACICH,                                        :
                              Plaintiff,                :
                                                        :
v.                                                      :
                                                        :
THE BOARD OF TRUSTEES OF THE                            :
EMPLOYEE BENEFIT FUNDS OF HEAT &                        :
FROST INSULATORS LOCAL 12; THE                          :
EMPLOYEE BENEFIT FUNDS OF HEAT                          :
AND FROST INSULATORS LOCAL 12; THE                      :
BOARD OF TRUSTEES OF THE PENSION                        :
FUND OF HEAT AND FROST INSULATORS                       :
LOCAL 12 PLAN; THE PENSION FUND OF                      :        **OPINION AND ORDER**
THE HEAT AND FROST INSULATORS                           :
LOCAL 12 PLAN; THE BOARD OF                             :        21 CV 9622 (VB)
TRUSTEES OF THE HEAT AND FROST                          :
INSULATORS LOCAL 12 WELFARE FUND;                       :
THE HEAT AND FROST INSULATORS                           :
LOCAL 12 WELFARE FUND; AL WASSELL,                      :
in his capacity as Fund Manager of The                  :
Employee Benefit Funds of Heat & Frost                  :
Insulators Local 12; and JOHN DOES 1–10,                :
whose identities are currently unknown,                 :
constituting the trustees, plan administrators or       :
fiduciaries of the Employee Benefit Funds of            :
Heat & Frost Insulators Local 12 and the Pension        :
Fund of Heat and Frost Insulators Local 12,             :
                              Defendants.               :
------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Matthew Aracich, the former business manager of the Heat & Frost Insulators

Local 12 Union (the "Union"), brings this action against the Employee Benefit Funds and the

Welfare Fund of the Union ("the Welfare Plan"); the Pension Fund of the Union (the "Pension

Plan," and, together with the Welfare Plan, the "Plans"); the Board of Trustees of each of the

Plans (the "Trustees"); Al Wassell, in his capacity as manager of the Plans; and ten, unidentified

defendants constituting the trustees, plan administrators or fiduciaries of the Plans, alleging

defendants improperly determined plaintiff was not "retired" under the Plans' governing

documents and denied his request for pension and retiree health benefits, in violation of the

Employee Retirement Income Security Act of 1974 ("ERISA") and state law.

Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6).

(Doc. #25).

For the reasons set forth below, the motion is GRANTED.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded

allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as

summarized below.

I.      Plan Terms Regarding Retirement

The Pension Plan provides pension benefits to qualifying participants who retire.  The

Welfare Plan provides health, medical, and welfare benefits to participants during their

employment with the Union and retiree health benefits when qualifying participants retire.

Section 6.8 of the Pension Plan's governing document provides "[t]o be considered

retired, a Participant must have separated from Covered Employment."  (Doc. #27-3 ("Pension

Plan Document") § 6.8(a); Compl. ¶ 25).

"Covered Employment" means "employment of an Employee by an Employer" and

includes "full-time service as an officer or employee of . . . a state or local central labor council

provided that contributions are made to the Fund with respect to such service."  (Pension Plan

Document § 1.10; Compl. ¶ 19).

An "Employee" means "any person employed by an Employer" and "include[s] employees of . . . a state or local central labor council provided the contributions for such employees are made in accordance with the Fund."  (Pension Plan Document § 1.11(a); Compl. ¶ 20).

An "Employer" or "Contributing Employer" means "any employer obligated by its collective bargaining agreement . . . to contribute to the fund" and includes "a state or local central labor council if contributions for its employees are made."  (Pension Plan Document § 1.8; Compl. ¶ 21).

The Welfare Plan defines "retire" the same way "as that term is defined in the [Pension Plan Document]."  (Doc. #27-1 ("Welfare Plan SPD") at 4).

II.    <u>Denial of Plaintiff's Retirement Benefits</u>

For some unspecified period of time, plaintiff was the Union's business manager.  While he was an employee of the Union, plaintiff participated in the Plans.

At some point, plaintiff left the Union and became president of the Building and Construction Trades Council of Nassau and Suffolk Counties (the "Council").

The Council was not a Union employer and did not contribute to the Plans.  However, after plaintiff began employment with the Council, the Council entered into an agreement with the Trustees of the Plans that the Council would contribute to the Plans on plaintiff's behalf (the "Participation Agreement").  Thus, under the Participation Agreement, plaintiff was permitted to continue participating in the Plans and accruing benefits thereunder while he worked for the Council.

On January 27, 2021, the Council terminated the Participation Agreement effective January 1, 2021, and engaged another benefits provider for plaintiff.

On February 11, 2021, defendant Wassell, the manager of the Plans, sent plaintiff a letter

confirming the Plans accepted the Council's termination of the Participation Agreement.

On February 26, 2021, plaintiff sent Wassell a letter announcing he would be "retiring

from [the Union]" effective at four o'clock that afternoon.  (Doc. #1 ("Compl.") ¶ 12).

Plaintiff's letter stated he expected "my retirement also includes maintaining health coverage

with the health care provided by the funds."  (Id.).  Plaintiff remained employed as president of

the Council after submitting the February 26 letter.  At that time, plaintiff was sixty years old and

had over thirty years of service credit under the Plans' governing documents.

By letter dated March 12, 2021, Wassell informed plaintiff that the Plans denied his

request "because you have never ceased working for the [Council]" and therefore he was "not

eligible under the terms of the Plan to commence receiving a pension benefit at this time."

(Compl. ¶ 14).  The March 12 letter referred to the Pension Plan's Summary Plan Description

("Pension Plan SPD"), which states a participant "must stop working" before pension benefits

could begin.  (Id.)  Thus, because plaintiff had remained "continuously employed" by the

Council, plaintiff was not eligible to receive retirement benefits.  (Id.)

Plaintiff appealed the denial of his retirement benefits on May 3, 2021.  The Trustees

denied his appeal on May 21, 2021.  The Trustees explained that although plaintiff was "no

longer working in Covered Employment as defined by the Plan document," plaintiff had "not

experienced a separation from employment," and therefore had "not 'retired' as required under

the terms of the Plan and applicable law."  (Doc. #27-8 ("Appeal Denial") at ECF 3).[1]

---

[1]      "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case
Filing system.

The Appeal Denial further explained that the requirement that a participant "stop working" before receiving pension benefits was "intended to comply with U.S. Department of Treasury Regulation[s]," referring to Internal Revenue Service guidance that "a qualified pension plan is generally not permitted to pay benefits before retirement" meaning "when [a participant] stops performing service for the employer." (Appeal Denial at ECF 3). Therefore, the Trustees contended that "allowing a participant who has not legitimately retired to commence receiving a benefit could violate section 401(a) of the Internal Revenue Code and result in disqualification of the [Pension] Plan." (Id.)

## DISCUSSION

I.    <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).[2]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.

2010). The Court may also consider any documents "integral to the complaint" when their

import and authenticity are not disputed. Id. A document is considered "integral to the

complaint" when "the complaint relies heavily upon its terms and effect." Id.[3]

## II.    ERISA Section 502(a)(1)(B) Claim (Count One)

Defendants argue plaintiff fails plausibly to plead that the Trustees' denial of plaintiff's

benefits was arbitrary and capricious.

The Court agrees.

### A.    Legal Standard

"Section 502 of ERISA authorizes participants in an employee benefit plan to bring a

civil action (i) to recover benefits due to them under the terms of their plan, and (ii) to obtain

---

[3]      Here, the complaint relies heavily on the Pension Plan Document (Doc. #27-3), the
Pension Plan SPD (Doc. #27-2), the Welfare Plan SPD (Doc. #27-1), the February 26, 2021,
letter from plaintiff to Wassell (Doc. #27-5), the March 12, 2021, letter from Wassell to plaintiff
(Doc. #27-6), and the Appeal Denial (Doc. #27-8). (See, e.g., Compl. ¶¶ 16, 18, 30, 31, 32, 34,
35, 36, 37, 38, 40). Accordingly, the Court has considered these documents in addition to the
allegations set forth in the complaint itself. See Sunwoo v. JPMorgan Chase & Co., 2021 WL
2443814, at *6 (S.D.N.Y. 2021) (collecting cases considering, on a motion to dismiss, the
ERISA plan document, claim denial letters, appeal denial letters, and correspondence between
plaintiff's counsel and the plan fiduciaries).

other appropriate equitable relief to redress violations or enforce any provisions of ERISA or the terms of the plan." Soto v. Disney Severance Pay Plan, 26 F.4th 114, 117 (2d Cir. 2022).

The Court reviews a plan administrator's decision to deny benefits de novo unless the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

When "the relevant plan vests its administrator with discretionary authority over benefits decisions . . . the administrator's decisions may be overturned only if they are arbitrary and capricious." Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 210 (2d Cir. 2015). Such discretionary authority includes decisions made in "interpret[ing] ambiguous plan terms." Soto v. Disney Severance Pay Plan, 26 F.4th at 121. "But when an administrator is interpreting unambiguous plan terms, we generally apply a de novo standard of review because unambiguous language leaves no room for the exercise of discretion." Id. "Whether plan language is ambiguous is a question of law for the court, turning on whether the language is reasonably capable of more than one meaning within the context of the entire plan." Id.

Here, Section 6.3 of the Pension Plan Document provides:

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of the Plan, and decisions of the Trustees shall be final and binding on all parties.

(Pension Plan Document § 6.3).

Section 6.4 of the Pension Plan Document further provides:

> Any dispute as to eligibility, type, amount or duration of benefits or any right or claim to payments from the Plan shall be resolved by the Board of Trustees under and pursuant to the provisions of the Plan, and its decision of the dispute, right or claim shall be final and finding on all parties.

(Pension Plan Document § 6.4(a)).

The Pension Plan SPD similarly provides that the Board of Trustees "reserves the right, in its sole and absolute discretion, to . . . interpret and decide all matters under the Plan, or any benefits provided under the Plan." (Pension Plan SPD at 36).

The Welfare Plan SPD provides:

> In carrying out their . . . responsibilities under the Plan, the Board of Trustees . . . will have discretionary authority to interpret the terms of the Plan and to determine eligibility and entitlement to Plan Benefits in accordance with the terms of the Plan.  Any interpretation or determination will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary or capricious.

(Welfare Plan SPD at 73).

Because each Plan provides the Trustees discretionary authority over benefits decisions, the arbitrary and capricious standard of review applies to the Trustees' interpretation of ambiguous Plan terms.  See, e.g., Brown v. Bd. of Trs. of Bldg. Serv. 32B-J Pension Fund, 392 F. Supp. 2d 434, 443–44 (E.D.N.Y. 2005) (collecting cases applying the arbitrary and capricious standard based on language similar to Section 6.3 of the Pension Plan Document).

Under this "highly deferential" standard, to state a claim under Section 502(a)(1)(B), a plaintiff must allege that the trustees' interpretation was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Soto v. Disney Severance Pay Plan, 26 F.4th at 123.  "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control."  Zeuner v. SunTrust Bank Inc., 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016) (quoting McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132 (2d Cir. 2008)).

B.      Application

Here, the definition of "retire" in the Plans' governing documents is ambiguous, and the

Trustees' interpretation that plaintiff did not "retire" on February 26, 2021, was not arbitrary or

capricious.[4]

      1.      "Retire" is Ambiguous

"To be considered retired, a Participant must have separated from Covered

Employment."  (Pension Plan Document § 6.8(a); Compl. ¶ 25).

"Separate" is not defined in the Plans, and neither Section 6.8 nor the remaining

provisions of the Pension Plan Document explain whether an actual cessation of a participant's

current employment is required to "separate from Covered Employment."[5]  Thus, the term

"retire" is reasonably capable of more than one meaning, and, "[f]or the Complaint to state a

claim upon which relief may be granted, it must plead that the Plan Administrator's

interpretation of ["retire"] and consequent denial of . . . benefits to [plaintiff] were arbitrary and

capricious."  Soto v. Disney Severance Pay Plan, 26 F.4th at 123.

---

[4]      For clarity purposes, the Court will only cite to the Pension Plan Document in this analysis because, as discussed above, the Welfare Plan defines "retired" as having the definition in the Pension Plan.

[5]      The Pension Plan Document provides that the "rules as to what constitutes retirement (and separation from Covered Employment for purposes of retirement) differ for periods before attainment of Normal Retirement Age and after attainment of Normal Retirement Age, as described in Sections 6.9(a) and (b)."  (Pension Plan Document § 6.8(a)).  However, Sections 6.9(a) and (b) deal solely with suspensions of pension benefits after they had already commenced.  (Pension Plan Document §§ 6.9(a)–(b)).  Similarly, Section 6.8(b), which provides an exception to "retirement," only deals with circumstances when a participant has already "separated from his previous Covered Employment."  (Pension Plan Document § 6.8(b)).  Although Section 6.7(a) refers to a "postpone[ment] [of benefits] due to the Participant's continued employment," it does not explain whether a participant can "retire" notwithstanding continued employment.  (Pension Plan Document § 6.7(a)).

   2. <u>Trustees' Interpretation of "Retire"</u>

  Here, the Trustees based their determination that plaintiff did not "retire" on (i) the terms of the Plans' governing documents, which require a participant to "separate" from employment to retire (Pension Plan Document ¶ 6.8(a)); (ii) the Pension Plan SPD, which provides "[y]ou must stop working" for benefits to commence (Pension Plan SPD at 23); and (iii) the concern that providing benefits before plaintiff actually separated from employment would jeopardize the Pension Plan's tax-exempt status.

  Although summary plan descriptions "do not necessarily constitute the terms of the plan," ERISA "contemplates that the summary plan description will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." <u>Halberg v. United Behav. Health</u>, 408 F. Supp. 3d 118, 133 (E.D.N.Y. 2019). It was therefore reasonable for the Trustees to interpret ambiguous Plan terms in a manner consistent with the Pension Plan SPD.

  In addition, it was reasonable, and consistent with the Trustees' obligations to Plan participants, to interpret the Plans in a manner that will maintain the pension fund's tax-qualified status. In fact, Section 8.7 of the Pension Plan Document requires that the Pension Plan "be interpreted and applied consistent with" the requirements for tax qualification. For these reasons, "[s]everal federal district courts have upheld trustee interpretations of pension plans based on similar concerns about violating" the requirements for tax qualification. <u>Metzgar v. U.A. Plumbers and Steamfitters Local No. 22 Pension Fund</u>, 2022 WL 610340, at *2 (2d Cir. Mar. 2, 2022) (summary order) (trustees' interpretation that participants had to "separate completely from their prior employment" in order to "retire" not arbitrary and capricious).

Thus, the pleadings reflect reasoned bases for the Trustees' decision, and the Court cannot find the decision was arbitrary or capricious.

Accordingly, plaintiff's claim under ERISA Section 502(a)(1)(B) must be dismissed.[6]

III.   ERISA Section 510 Claim (Count Two)

Defendants argue plaintiff fails plausibly to state a claim under Section 510 of ERISA because plaintiff does not plead an "adverse employment action."

The Court agrees, and also concludes plaintiff fails to plead the requisite intent under Section 510 of ERISA.

Section 510 makes it

unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.  "An 'essential' element of a § 510 claim is 'to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510.'"  Wickes v. Westfair Elec. Co., 2021 WL 217318, at *9 (S.D.N.Y. Jan. 20, 2021) (quoting Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1111 (2d Cir. 1988)).

Here, absent additional factual support, plaintiff's conclusory allegation that defendants "engaged in a scheme to intentionally interfere with the contractual and vesting rights and benefit entitlements of the Plaintiff" is inadequate to plead defendants acted with the requisite

---

[6]    For the same reasons, plaintiff's claim for a declaratory judgment that the Trustees' denial of plaintiff's benefits was arbitrary and capricious (asserted in Count Three) must also be dismissed.

Plaintiff also labels his fourth cause of action a claim for "ERISA . . . Breach of Contract," so to the extent Count Four asserts a claim pursuant to Section 502(a)(1)(B) it is dismissed.

discriminatory or retaliatory intent.  (Compl. ¶ 48).  Moreover, because the only potentially

adverse action plaintiff identifies is the denial of his benefits, which, as discussed above, he fails

to plead were denied arbitrarily or capriciously, plaintiff does not adequately allege he suffered

adverse action.

Accordingly, plaintiff's claim pursuant to Section 510 of ERISA must be dismissed.

IV.     ERISA Section 204(g) Claim (Count Three)

Defendants argue plaintiff fails plausibly to allege a violation of Section 204(g) of

ERISA because plaintiff fails to identify a Plan amendment that reduced his accrued benefits.

The Court agrees.

Section 204(g) of ERISA, referred to as the "anti-cutback rule," provides "[t]he accrued

benefit of a participant under a plan may not be decreased by an amendment of the plan."  29

U.S.C. § 1054(g)(1).  "[T]he rule principally protects those benefits that a participant has earned,

rather than those that he might earn in the future."  Morrone v. Pension Fund of Local No. One,

I.A.T.S.E., 867 F.3d 326, 333 (2d Cir. 2017).  Because the rule "focuses on the effect of a plan

amendment . . . a court must consider whether, in any practical sense, the change of terms could

be viewed as shrinking the value of a participant's pension rights and reducing his promised

benefits."  Id. (emphasis in original).

Here, the Trustees' determination that plaintiff did not "retire" is not a Plan amendment.

"[E]ven broadly interpreted, the word 'amendment' contemplates that the actual terms of the

plan changed in some way, or that the plan improperly reserved discretion to deny benefits,

neither of which occurred here."  Metzgar v. U.A. Plumbers & Steamfitters Local No. 22

Pension Fund, 2022 WL 610340, at *3.  It is simply not the case, as plaintiff argues, that

defendants "accomplish[ed] the amendment via a Board of Trustees denial of Mr. Aracich's

12

pension and retirement health benefits." (Doc. #32 ("Pl. Mem.") at 14). Instead, rather than amending the Plan, the Trustees endeavored to apply the terms of the Plans' governing documents to plaintiff's request.

Moreover, plaintiff does not plausibly allege the Trustees' interpretation decreased his accrued benefits. Plaintiff argues the Trustees "modif[ied] the 'Contributing Employer' plan definition" to remove benefits to which he had vested rights. (Pl. Mem. at 14).[7] However, the parties agree plaintiff ceased working in Covered Employment as of January 1, 2021, at a time when he was sixty years old with thirty years of service credit. Plaintiff therefore fails to allege that the Trustees' interpretation had any effect on his accrued benefits.

Accordingly, plaintiff's claim under Section 204(g) of ERISA must be dismissed.

V.      ERISA Breach of Fiduciary Duty Claim (Count Five)

Defendants argue plaintiff does not sufficiently allege defendants breached their fiduciary duties under ERISA.

The Court agrees.

A.      Legal Standard

Section 502(a)(3) of ERISA authorizes a participant of an employee benefit plan to bring a civil action to redress fiduciary breaches. Sullivan-Mestecky v. Verizon Commc'ns, Inc., 961 F.3d 91, 98–99 (2d Cir. 2020). "[T]o state a claim under section 502(a)(3) for fiduciary

---

[7]      In support of his first cause of action, plaintiff alleges "[u]pon information and belief, the Board of Trustees met in 2021 and amended the [Pension Plan] to allow participants with 30 years' service credit and over 60 years old to receive a Regular Pension benefit." (Compl. ¶ 43). However, even if true, this amendment would have occurred after plaintiff ceased accruing benefits on January 1, 2021, and plaintiff does not allege it reduced his already-accrued benefits. "Employers remain perfectly free to modify the deal they are offering their employees, as long as the change goes to the terms of compensation for continued, future employment." Morrone v. Pension Fund of Local No. One, I.A.T.S.E., 867 F.3d at 338.

breach . . . a plaintiff must establish three elements:  (1) the defendant was performing a fiduciary function when it engaged in the conduct at issue in the complaint; (2) the defendant breached a fiduciary duty; and (3) the plaintiff is entitled to equitable relief."  In re DeRogatis, 904 F.3d 174, 190 (2d Cir. 2018).

"ERISA imposes a 'prudent man standard of care' on fiduciaries entrusted with the administration of  [ERISA] plans."  Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., 712 F.3d 705, 715 (2d Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)).  This standard "requires fiduciaries to act solely in the interest of the participants and beneficiaries"; to "act for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan"; to "use the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use"; and "to discharge their duties in accordance with the [plan] documents" and ERISA.  Id. (quoting 29 U.S.C. §§ 1104(a)(1)(A), (B), (D)).

These duties impose an obligation on plan fiduciaries "to provide participants with complete and accurate information about plan benefits," and "a fiduciary may be liable for fiduciary breach if a plan member is misled" by unclear plan documents and misrepresentations by the fiduciary.  In re DeRogatis, 904 F.3d at 193–94.

B.      Application

Although plaintiff has adequately alleged defendants were fiduciaries and were performing a fiduciary function when communicating with plaintiff about his plan benefits, plaintiff has not plausibly alleged defendants breached their duties.

First, as discussed above, plaintiff has not plausibly alleged defendants acted arbitrarily and capriciously in denying plaintiff's request for benefits.  Thus, plaintiff has not alleged such denial constituted a failure by the Trustees to act in accordance with the Plans.

Second, plaintiff has not plausibly alleged defendants made any misrepresentation regarding the Plans' terms, either directly to plaintiff or in the Plans' documentation.  To the contrary, based on the communications attached to the pleadings, defendants consistently communicated that plaintiff was not eligible for retirement benefits on February 26, 2021, because he never stopped working, which aligns with the language in the governing Plan documents.

Finally, regarding plaintiff's claims that defendants violated the reporting and disclosure requirements set forth in 29 U.S.C. §§ 1024(b) and 1030,[8] even if the Court assumes defendants act as fiduciaries in performing these functions, plaintiff does not allege any documents defendants failed to provide, or any reporting standard with which defendants failed to comply.

Accordingly, the breach of fiduciary duty claims must be dismissed.

VI.   Breach of Contract Claim (Count Four)

Defendants argue plaintiff's state-law breach of contract claim is duplicative of, and therefore preempted by, ERISA.

The Court agrees.

"[A]ny state-law cause of action that duplicates . . . the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is

---

[8]      Plaintiff also appears to assert a claim pursuant to 29 C.F.R. § 2520.104-23(b), but this rule applies only to "plans maintained by an employer for a select group of management or highly compensated employees," and does not apply to the Pension Plan or the Welfare Plan. Accordingly, this claim must also be dismissed.

therefore pre-empted."  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).  "In other words,

if an individual . . . could have brought his claim under ERISA § 502(a)(1)(B), and where there

is no other independent legal duty that is implicated by a defendant's actions, then the

individual's cause of action is completely pre-empted by ERISA."  Id. at 210.  For that reason,

"breach of contract claims arising from a failure to pay benefits under an ERISA plan are

preempted."  Chau v. Hartford Life Ins. Co., 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016).

Here, plaintiff claims defendants breached the Plans' governing documents by not paying

his benefits.  Therefore, plaintiff's breach of contract claim is preempted by ERISA.  See

Ruderman v. Liberty Mut. Grp., Inc., 2022 WL 244086, at *3 (2d Cir. Jan. 27, 2022) (summary

order) (district court correctly dismissed breach of contract claim as preempted by ERISA).

Accordingly, the breach of contract claim must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. # 25) and close this case.

Dated: September 19, 2022
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

16

**SPA17**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MATTHEW ARACICH,

                          Plaintiff,

          -against-                                                    21 **CIVIL** 9622 (VB)


                                                                      **JUDGMENT**

THE BOARD OF TRUSTEES OF THE EMPLOYEE
BENEFIT FUNDS OF HEAT & FROST INSULATERS
LOCAL 12; THE EMPLOYEE BENEFIT FUNDS OF
HEAT AND FROST INSULATERS LOCAL 12; THE
BOARD OF TRUSTEES OF THE PENSION FUND
OF HEAT AND FROST INSULATERS LOCAL 12
PLAN; THE PENSION FUND OF THE HEAT AND
FROST INSULATERS LOCAL 12 PLAN; THE
BOARD OF TRUSTEES OF THE HEAT AND
FROST INSULATERS LOCAL 12 WELFARE
FUND; THE HEAT AND FROST INSULATERS
LOCAL 12 WELFARE FUND; AL WASSELL, in
his capacity as Fund Manager of The Employee
Benefit Funds of Heat & Frost Insulaters Local 12;
and JOHN DOES 1–10, whose identities are currently
unknown, constituting the trustees, plan administrators
or fiduciaries of the Employee Benefit Funds of Heat
& Frost Insulaters Local 12 and the Pension Fund of
Heat and Frost Insulaters Local 12,

                          Defendants.
-----------------------------------------------------------X

          It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated September 20, 2022, Defendant's motion to dismiss is granted; accordingly,

the case is closed.

**Dated:** New York, New York

          September 20, 2022

                                                  **RUBY J. KRAJICK**

                                        _____
                                                  **Clerk of Court**

                          **BY:**         K. mango
                                        _____
                                                  **Deputy Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MATTHEW ARACICH,

              Plaintiff,

      -v-                                    Case No. 7:21-cv-9622-VB-JCM
THE BOARD OF TRUSTEES OF THE
EMPLOYEE BENEFIT FUNDS OF HEAT & FROST
INSULATORS LOCAL 12, THE EMPLOYEE
BENEFIT FUNDS OF HEAT & FROST INSULATORS
LOCAL 12, THE BOARD OF TRUSTEES OF THE
PENSION FUND OF HEAT AND FROST INSULATORS
LOCAL 12 PLAN, THE PENSION FUND OF HEAT
AND FROST INSULATORS LOCAL 12 PLAN,
THE BOARD OF TRUSTEES OF THE HEAT
AND FROST INSULATORS LOCAL 12 WELFARE
FUND, THE HEAT AND FROST INSULATORS
LOCAL 12 WELFARE FUND, AL WASSELL,
in his capacity as Fund Manager of THE
EMPLOYEE BENEFIT FUNDS OF HEAT & FROST
INSULATORS LOCAL 12, and John Does 1-10, whose
identities are currently unknown, constituting the trustees,
plan administrators or fiduciaries of the Employee Benefit
Funds of Heat & Frost Insulators Local 12 and the
Pension Fund of Heat and Frost Insulators Local 12
and the Heat and Frost Insulators Local 12 Welfare Fund,

              Defendants, individually and jointly
              and severally liable,

-------------------------------------------------------------------X

**NOTICE OF APPEAL**

      Notice is hereby given that Plaintiff Matthew Aracich in the above named case hereby

appeals to the United States Court of Appeals for the Second Circuit from the final Judgment

filed September 20, 2022 (ECF No. 36) and Court's Opinion and Order filed September 20, 2022

(ECF No. 35) and each and every part thereof.

Dated: White Plains, New York
           October 5, 2022

                              Yours, etc.,

                              TRIVELLA & FORTE, LLP

                              */s/ Christopher Smith* _____
                              By: Christopher Smith
                              *Attorneys for the Plaintiff/Appellant*
                              1311 Mamaroneck Avenue, Suite 170
                              White Plains, New York 10605
                              (914) 949-9075

2