# 22-2544-cv

# United States Court of Appeals
### for the
# Second Circuit

MATTHEW ARACICH,

*Plaintiff-Appellant,*

— v. —

THE BOARD OF TRUSTEES OF THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12, THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12, THE BOARD OF TRUSTEES OF THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE BOARD OF TRUSTEES OF THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, AL WASSELL, in his capacity as Fund Manager of The Employee Benefit Funds of Heat & Frost Insulators Local 12, JOHN DOES 1-10, whose identities are currently unknown, constituting the trustees, plan administrators or fiduciaries of the Employee Benefit Funds of Heat & Frost Insulators Local 12 and the Pension Fund of Heat and Frost Insulators Local 12 and the Heat and Frost Ins,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

JOSEPH E. CLARK
MYRON D. RUMELD
SYDNEY L. JULIANO
PROSKAUER ROSE LLP
*Attorneys for Defendants-Appellees*
Eleven Times Square
New York, New York 10036
(212) 969-3000

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendants-Appellees the Board of Trustees of the Employee Benefit Funds of Heat & Frost Insulators Local 12, the Employee Benefit Funds of Heat & Frost Insulators Local 12, the Board of Trustees of the Pension Fund of Heat and Frost Insulators Local 12 Plan, the Pension Fund of Heat and Frost Insulators Local 12 Plan, the Board of Trustees of the Heat and Frost Insulators Local 12 Welfare Fund, and the Heat and Frost Insulators Local 12 Welfare Fund are not required to file a statement pursuant to Federal Rule of Appellate Procedure 26.1 because they are not corporate parties.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................1

COUNTER-STATEMENT OF THE ISSUES ....................................2

COUNTER-STATEMENT OF THE CASE ........................................3

   I.   Relevant Provisions Of The Funds' Governing Documents..........3

     A.   Generally Applicable Provisions...........................................3

     B.   Plan Provisions Specific To Aracich's Participation And Alleged Retirement. ...................................................................5

   II.   Aracich's Employment And Participation In The Funds............6

   III.   Aracich's Alleged Retirement. ..........................................7

   IV.   Aracich's Administrative Claim And Appeal For Benefits. .........................7

   V.   Procedural History...............................................................9

     A.   ERISA Section 502(a)(1)(B) Claim. ....................................11

     B.   ERISA Section 510 Claim...................................................11

     C.   ERISA Section 204(g) Claim. .............................................12

     D.   Breach Of Contract Claim. .................................................12

     E.   Fiduciary Breach Claim......................................................13

SUMMARY OF ARGUMENT ..........................................................13

STANDARD OF REVIEW ...............................................................15

ARGUMENT .....................................................................................16

   I.   The District Court Properly Dismissed Aracich's Claim For Benefits Under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)..................16

     A.   The District Court Properly Based Its Decision On Documents Referred To In, And/Or Integral To, The Complaint............17

     B.   The District Court Properly Applied An Arbitrary And Capricious Standard Of Review. ..........................................18

     C.   The Trustees' Interpretation Of "Retire" Was Not Arbitrary And Capricious..................................................................20

        1.   The Pension Plan Document And Pension Fund SPD.......................21

2.      Construction Of The Plan Consistently With Maintaining
        Its Tax-Qualified Status. ...................................................................24

II.     The District Court Properly Dismissed Aracich's
        ERISA Section 510 Claim...........................................................28

III.    The District Court Correctly Held That Aracich
        Did Not Plausibly Allege A Violation Of The Anti-Cutback Rule. ...........31

IV.     The District Court Properly Dismissed Aracich's
        Breach Of Contract Claim As Preempted By ERISA...............................33

V.      The District Court Properly Dismissed Aracich's
        Fiduciary Breach Claim...............................................................35

CONCLUSION ...................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004).................................................................................33, 34

*Andrews v. Realogy Corp. Severance Pay Plan for Officers*,
    No. 13-cv-8210, 2015 WL 736117 (S.D.N.Y. Feb. 20, 2015)...........................27

*Babino v. Gesualdi*,
    278 F. Supp. 3d 562 (E.D.N.Y. 2017)..................................................................36

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................15

*Bouboulis v. Transp. Workers Union of Am.*,
    442 F.3d 55 (2d Cir. 2006).................................................................................15

*Central Laborers' Pension Fund v. Heinz*,
    541 U.S. 739 (2004).....................................................................................32, 33

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..............................................................................17

*Chau v. Hartford Life Ins. Co.*,
    167 F. Supp. 3d 564 (S.D.N.Y. 2016).................................................................33

*Coulter v. Morgan Stanley & Co.*,
    753 F.3d 361 (2d Cir. 2014)..............................................................................15

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund*,
    609 F.3d 133 (2d Cir. 2010)..............................................................................20

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)..............................................................................16

*Frommert v. Conkright*,
    206 F. Supp. 2d 435 (W.D.N.Y. 2002)...............................................................28

*Frommert v. Conkright*,
    433 F.3d 254 (2d Cir. 2006)..............................................................................36

iv

*Gorfinkel v. Vayntrub*,
   No. 13-cv-3093, 2014 WL 4175914 (E.D.N.Y. Aug. 20, 2014)........................28

*Grieve v. Tamerin*,
   269 F.3d 149 (2d Cir. 2001) ................................................................16

*In re DeRogatis*,
   904 F.3d 174 (2d Cir. 2018) ...............................................................36

*Kirkendall v. Haliburton, Inc.*,
   707 F.3d 173 (2d Cir. 2009) ...............................................................31

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ..............................................................37

*Mayer v. Ringler Assocs. Inc.*,
   9 F.4th 78 (2d Cir. 2021) ...................................................................20

*McCauley v. First Unum Life Ins. Co.*,
   551 F.3d 126 (2d Cir. 2008) ...............................................................20

*Meakin v. Cal. Field Ironworkers Pension Tr.*,
   No. 16-cv-7195, 2018 WL 405009 (N.D. Cal. Jan. 12, 2018) ...........................27

*Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*,
   No. 13-cv-85, 2019 WL 1428083 (W.D.N.Y. Mar. 28, 2019)....................21, 31

*Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*,
   No. 20-3791, 2022 WL 610340 (2d Cir. Mar. 2, 2022) ........................22, 26, 31

*Paneccasio v. Unisource Worldwide, Inc.*,
   532 F.3d 101 (2d Cir. 2008) ...............................................................34

*Powell v. Ocwen Loan Servicing, LLC*,
   840 F. App'x 610 (2d Cir. 2020) .........................................................37

*Pratt v. Petroleum Prod. Mgmt., Inc. Emp. Sav. Plan & Tr.*,
   920 F.2d 651 (10th Cir. 1990) ............................................................35

*Roe v. Empire Blue Cross Blue Shield*,
   No. 12-cv-4788, 2014 WL 1760343 (S.D.N.Y. May 1, 2014)....................28, 30

*Roganti v. Metro Life Ins. Co.*,
786 F.3d 201 (2d Cir. 2015) ...............................................................18

*Ruderman v. Liberty Mut. Grp., Inc.*,
No. 21-817, 2022 WL 244086 (2d Cir. Jan. 27, 2022)................................17, 34

*Saini v. CIGNA Life Ins. Co. of N.Y.*,
No. 17-cv-1922, 2018 WL 1959551 (S.D.N.Y. Apr. 24, 2018).......................17

*Scott v. Fischer*,
616 F.3d 100 (2d Cir. 2010) ...............................................................16

*Soto v. Disney Severance Pay Plan*,
26 F.4th 114 (2d Cir. 2022) ...............................................................20

*Wegmann v. Young Adult Inst., Inc.*,
No. 15-cv-3815, 2016 WL 827780 (S.D.N.Y. Mar. 2, 2016) ...........................29

*Wharton v. Duke Realty, LLP*,
467 F. Supp. 2d 381 (S.D.N.Y. 2006) ...................................................30

*Wickes v. Westfair Elec. Co.*,
No. 19-cv-10673, 2021 WL 217318 (S.D.N.Y. Jan. 20, 2021).........................29

*Wilson v. HSBC Bank, USA*,
834 F. App'x 607 (2d Cir. 2020) ........................................................17

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ...............................................................15

*Zeuner v. Suntrust Bank Inc.*,
181 F. Supp. 3d 214 (S.D.N.Y. 2016) ...................................................29

STATUTES

26 U.S.C. § 401(a)(36)(A) ................................................................24, 25, 26, 27

29 U.S.C. § 1002(2) ............................................................................3

29 U.S.C. § 1002(37) ...........................................................................3

29 U.S.C. § 1024(b) ...........................................................................10

29 U.S.C. § 1030................................................................................10

vi

29 U.S.C. § 1054(g) ..........................................................................passim

29 U.S.C. § 1104(a)(1)(D) .........................................................................21

29 U.S.C. § 1132 .............................................................................passim

29 U.S.C. § 1140 .............................................................................passim

29 U.S.C. § 1144 .................................................................................34

## OTHER AUTHORITIES

29 C.F.R. § 1.401(a)-1(b)(1)(i) ...................................................................25

29 C.F.R. § 2520.104-23(b) ......................................................................10

I.R.S., *Coronavirus-related relief for retirement plans and IRAs questions and answers*, A1, https://www.irs.gov/newsroom/coronavirus-related-relief-for-retirementplans-and-iras-questions-and-answers (page last updated Aug. 19, 2022) ...................................................................................25

I.R.S. Priv. Ltr Rul. 201147038, 2011 WL 5893533 (Nov. 25, 2011) ...............9, 26

Federal Rule of Civil Procedure 12(b)(6) .............................................10, 15, 16, 17

Labor and Employment Law Section, *Employee Benefits Law, Chapter 5. Regulation of Qualified Retirement Income Plans Generally* (current through December 31, 2020, with selected updates through April 30, 2021) ..........................................................24

Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/retire (last visited Jan. 5, 2023) ...................................22

Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/separate (last visited Jan. 5, 2023) ...............................22

## PRELIMINARY STATEMENT

Plaintiff-Appellant Matthew Aracich ("Aracich") commenced this lawsuit following the decision by the Trustees of the Pension and Welfare Funds of Heat and Frost Insulators Local 12 Plan (the "Funds") to deny his claim for pension and retiree welfare benefits. Seizing on a hyper-technical reading of the applicable plan documents, Aracich contended that he "retired" from covered employment, and thus became entitled to commence receiving retirement benefits, when the trades council for which he served as President ceased contributing to the Funds. The Funds' Trustees rejected this claim, finding that Aracich could not be considered "retired" if he was still working for the same employer.

The district court correctly concluded that the Trustees did not act arbitrarily or capriciously in reaching this conclusion, and thus that Aracich did not have a viable claim for benefits. The court also correctly rejected Aracich's other statutory and common law claims, finding that: (i) Aracich did not plausibly allege any adverse employment action or the requisite specific intent that could give rise to a claim for wrongful interference with his right to obtain benefits under Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140; (ii) Aracich did not identify any amendment or other change to the pension fund that could support a claim of an illegal "cutback" of accrued benefits under Section 204(g) of ERISA, 29 U.S.C. § 1054(g), and in any event Aracich

1

had not suffered any loss of accrued benefits that could give rise to such a claim; (iii) Aracich had no viable common law claim for breach of contract because that claim was duplicative of his benefit claim and, as such, preempted by ERISA; and (iv) Aracich had no plausible claim for fiduciary breach under ERISA because he had not plausibly alleged a violation of the governing plan documents or ERISA's disclosure or reporting requirements.

Aracich has presented no grounds on appeal that were not previously considered and properly rejected, or that otherwise would warrant reversal of the district court's well-reasoned decision. Accordingly, the Court should affirm the district court's dismissal of the Complaint in full.

## <u>COUNTER-STATEMENT OF THE ISSUES</u>

1. Did the district court correctly dismiss Aracich's claim for pension and welfare benefits because the Trustees' conclusion that Aracich did not "retire" within the meaning of the pension and welfare fund documents was not arbitrary and capricious?

2. Did the district court correctly dismiss Aracich's claim for violations of ERISA Section 510, 29 U.S.C. § 1140, because Aracich failed to plausibly allege that Defendants-Appellees took any "adverse employment action" or had the requisite specific intent to interfere with Aracich's rights to benefits under ERISA?

3.      Did the district court correctly hold that Aracich did not plausibly

plead a violation of ERISA's anti-cutback rule, as set forth in ERISA Section

204(g), 29 U.S.C. § 1054(g), because he did not identify a plan amendment or

other change that reduced his accrued benefits?

4.      Did the district court correctly conclude that Aracich's state law

breach of contract claim seeking recovery of his retirement benefits was preempted

by ERISA?

5.      Did the district court correctly conclude that Aracich failed to plead a

viable claim for breach of fiduciary duty because he failed to plausibly allege that

the Trustees wrongfully denied his benefits, misrepresented the terms of the

applicable plans, or violated ERISA's disclosure and reporting requirements?

## COUNTER-STATEMENT OF THE CASE

### I.    Relevant Provisions Of The Funds' Governing Documents.

#### A.      Generally Applicable Provisions.

The Pension Fund of Heat and Frost Insulators Local 12 Plan (the "Pension

Fund") is a multiemployer pension plan within the meaning of Sections 3(2) and

3(37) of ERISA, 29 U.S.C. §§ 1002(2) & (37).  The Welfare Fund of Heat and

Frost Insulators Local 12 Plan (the "Welfare Fund") is a multiemployer welfare

plan under the same statutory provisions.  The Pension and Welfare Fund

(collectively, the "Funds") were each established as a result of collective

bargaining agreements ("CBAs") between the International Association of Heat

and Frost Insulators Local No. 12 (the "Union") and employers who contribute to the Funds on behalf of their employees.  A117; A169.  The Funds were established for the purpose of providing pension and welfare benefits, and they are jointly administered by a Board of Trustees consisting of Union and Employer representatives (the "Trustees").  *Id.*

The governing plan document for each Fund confers on the Trustees the discretion to interpret the terms of the Pension Fund and make benefit determinations.  Specifically, the Pension Fund's governing plan document (the "Pension Plan Document") designates the Trustees as "the sole judges of the standard of proof required in any case and the application and interpretation of the Plan," and provides that the Trustees' decisions "shall be final and binding on all parties."  SPA7; A232–35, §§ 6.3, 6.4.  Similarly, the governing document for the Welfare Fund (the "Welfare Fund SPD") states that the Trustees and claims administrator have "discretionary authority to interpret the terms of the Plan and to determine eligibility and entitlement to Plan Benefits in accordance with the terms of the Plan[,]" and that "[a]ny interpretation or determination [made by the Trustees] will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious."  SPA8; A118.

4

The Pension Plan Document expressly requires the Trustees to interpret it consistently with its terms, and with the intent of maintaining the Pension Fund's tax-qualified status and remaining compliant with ERISA.  SPA10; A251, § 8.7.

### B.    Plan Provisions Specific To Aracich's Participation And Alleged Retirement.

The Pension Fund provides retirement benefits to participants who have retired and qualify for either a "Regular Pension" or an "Early Retirement Pension."  A211–12, §§ 3.2, 3.4.  Eligibility for either type of pension is based, in part, on a participant's "Pension Credits," which are earned based on the participant's earnings and service in "Covered Employment."  A208, § 1.20; A216, § 4.1.  "Covered Employment" is defined as employment with an employer that is obligated by a CBA or other agreement with the Union to contribute to the Pension Fund (a "Contributing Employer").  A205, § 1.10.  Covered employment includes employment with the Union or a labor council, provided that the Union or such council contributes to the Pension Fund at a rate equal to the contribution rate for other contributing employers.  *Id.*

To qualify for a "Regular Pension," a participant must reach "Normal Retirement Age," *i.e.*, age 65, and have at least five years of pension credit.  A208, § 1.17; A211, § 3.2.  To qualify for an "Early Retirement Pension," a participant must reach age 55 and have at least 10 years of pension credit.  A212, § 3.4.

The Pension Plan Document provides that "[t]o be considered retired, a Participant must have separated from Covered Employment." A239, § 6.8(a); A4.10, ¶ 25. The Pension Fund's Summary Plan Description (the "Pension Fund SPD") states that, in order to commence pension benefits, a participant "must stop working." A185.

The Welfare Fund provides retiree health benefits to participants who "work until age 60 and then Retire (as that term is defined in the [Pension Plan Document]) while eligible for benefits." A132; *see also* A4.11, ¶ 32.[1]

## II.    Aracich's Employment And Participation In The Funds.

Aracich participated in the Funds for several years, including while he was employed by the Union as its Business Manager. A4.6, ¶ 7. He left his position with the Union in approximately 2018. Sometime thereafter, he became President of the Nassau-Suffolk Building Trades Council (the "Council"), where he remains employed. A4.6, ¶ 7; A283–84. In April 2020—after accepting employment with the Council—Aracich executed, on behalf of the Council, a participation agreement with the Funds (the "Participation Agreement"), pursuant to which the

---

[1] Because the Welfare Fund SPD incorporates the Pension Plan Document's definition of "retire," we will refer only to the Pension Plan Document and its definition when discussing the Trustees' determination that Aracich did not "retire" within the meaning of the Funds' governing documents, as the district court did. SPA9 n.4.

Council agreed to contribute to the Funds on his behalf. A276–79; A4.12, ¶ 35. The Participation Agreement enabled Aracich to resume credited service with the Funds. A276–79.

## III.   **Aracich's Alleged Retirement.**

On January 27, 2021, Aracich (on behalf of the Council) informed the Funds that, effective January 1, 2021, the Council intended to terminate the Participation Agreement pursuant to which the Council had been making contributions on his behalf. A4.7, ¶ 13. About a month later, on February 26, 2021, Aracich sent a letter to the manager of the Pension Fund, stating that he would "be retiring from Local Union No. 12" that day. A4.6–4.7, ¶ 12; A280. At the time, Aracich was 60 years old—old enough to meet the age requirement for both an Early Retirement Pension and retiree welfare benefits. Notwithstanding his stated intention to "retire," however, Aracich has remained fully employed as President of the Council.

## IV.   **Aracich's Administrative Claim And Appeal For Benefits.**

The Trustees treated Aracich's February 26 letter as a claim for pension benefits (specifically, an Early Retirement Pension), and denied the claim by letter dated March 12, 2021. A4.7–4.8, ¶ 14; A281–82.[2] The denial letter explained that

---

[2] Aracich never submitted a claim for coverage under the Welfare Fund as required by the Welfare Fund SPD's claims procedures. For this reason, in their motion to dismiss, Defendants-Appellees included the argument that Aracich failed to

Aracich was not eligible to commence receiving his pension benefits because, having remained continuously employed with the Council, he had not "retired" within the meaning of the Pension Plan Document. A281–82. The letter also referred to the Pension Fund SPD's explanation that a participant "must stop working" to commence benefits. A281.

On May 3, 2021, Aracich appealed the claim denial to the Trustees. A4.11, ¶ 33; A283–85. In his appeal, Aracich contended that he had "retired," and therefore was entitled to immediately commence receipt of his pension benefits, because "his post-retirement work is with and he is paid by the [Council] . . . and his employment is not covered by a collective bargaining agreement with [the Union]." A283–84. He argued further that the terms of the Pension Plan Document and Pension Fund SPD violated ERISA's "anti-cutback" rule, Section 204(g) of ERISA, 29 U.S.C. § 1054(g), by "expand[ing] which types of post-retirement employment triggered suspension of plan benefits." A284.

The Trustees denied Aracich's appeal by letter dated May 21, 2021. A288. In so doing, they reiterated that he was not "retired" under the terms of the Pension Plan Document and the Pension Fund SPD because he had not separated from his

---

exhaust his administrative remedies in connection with his claim for benefits from the Welfare Fund. A28–29. The district court did not address this argument, and instead dismissed Aracich's claim for both pension and health benefits because Aracich had not "retired." SPA9–11.

employment with the Council.  A4.11–4.12, ¶¶ 34, 36; A289.  The Trustees also

denied the appeal because a determination that Aracich could commence his

pension benefits while he continued working could compromise the Pension

Fund's tax-qualified status.  A289.  The letter explained that the Internal Revenue

Code does not permit a qualified pension plan to pay benefits to a participant who

is less than 65 years old if that participant has not stopped working for his or her

employer, unless the plan document contains a provision specifically authorizing

such payments.  *Id.*; I.R.S. Priv. Ltr. Rul. 201147038, 2011 WL 5893533 (Nov. 25,

2011).  Finally, in response to Aracich's argument that the Pension Fund had

illegally suspended his accrued benefits, the Trustees concluded that they had not

suspended anything, but rather had merely determined that Aracich was ineligible

to commence benefits in the first place.  A290.

## V.  **Procedural History**.

Aracich filed his Complaint on November 19, 2021.  The Complaint asserted

five causes of action.  Count One, "ERISA Violation," asserted a claim for pension

and welfare benefits under ERISA Section 502(a)(1)(B), based on the contention

that the Trustees arbitrarily and capriciously denied Aracich's pension and welfare

benefits under the terms of the Funds.  A4.6–4.15, ¶¶ 11–46.  Count Two asserted

that, in a violation of ERISA Section 510, the Trustees "engaged in a scheme to

intentionally interfere with [Aracich's] contractual and vesting rights and benefit

entitlements . . ." by allegedly: (i) denying him benefits to which he is entitled and inducing other Fund representatives to interfere with his rights under the Funds; (ii) failing to notify him of a Pension Fund amendment that post-dated his alleged retirement; and (iii) treating him differently from similarly situated Fund participants. A4.15–4.17, ¶¶ 47–53. Count Three sought a declaratory judgment that Aracich is entitled to benefits under the Funds because the Trustees' determination was arbitrary and capricious and also violated ERISA, including its "anti-cutback" rule in Section 204(g). A4.17–4.18, ¶¶ 54–58. Count Four asserted that the Trustees' denial of Aracich's benefit claims constituted common law breach of contract. *See* A4.18–4.19, ¶¶ 59–61. Finally, Count Five contended that the Trustees breached their fiduciary duties by denying Aracich benefits from the Funds in contravention of the governing plan documents, misrepresenting the terms of these documents, and failing to comply with the disclosure and reporting requirements set forth in 29 C.F.R. § 2520.104-23(b), 29 U.S.C. § 1030 and/or 29 U.S.C. § 1024(b). A4.19–4.20, ¶¶ 62–65.

The Trustees moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on the grounds that it failed to state a claim for relief. In a decision dated September 20, 2022, the district court dismissed the Complaint in its entirety for failure to state a claim, and directed the clerk of court to close the case. SPA1–16.

### A. ERISA Section 502(a)(1)(B) Claim.

After observing that the governing plan documents granted the Trustees discretionary authority to interpret the plans and their terms, the district court applied the "highly deferential" arbitrary and capricious standard of review to the Trustees' determination that Aracich did not "retire." SPA7–9. The court then held that Aracich did not plausibly plead that the Trustees' denial of his benefits was arbitrary and capricious because "the pleadings reflect reasoned bases for the Trustees' decision." SPA11. Specifically, the court held that the Trustees' determination that Aracich did not "retire" was reasonable because it was based on (i) the terms of the Funds' governing documents, which require a participant to "separate" from employment to retire; (ii) the Pension Fund SPD, which provides that a participant "must stop working" in order to commence receipt of benefits; and (iii) the Trustees' concern that permitting Aracich to commence pension benefits before he actually separated from employment would jeopardize the Pension Fund's tax-exempt status.[3] SPA10.

### B. ERISA Section 510 Claim.

The court held that Aracich failed to state a claim under Section 510 of ERISA because he did not plead that the Trustees took any "adverse employment

---

[3] For the same reasons, the court rejected Aracich's claim (in Count Three) for a declaratory judgment that the denial of his benefits was arbitrary and capricious. SPA11 n.6.

action" against him.  SPA11.  The court further concluded that Aracich's conclusory allegations regarding the Trustee's "scheme" to interfere with his right to benefits were insufficient to satisfy the requirement that he plausibly plead that the Trustees acted with discriminatory or retaliatory intent.  SPA11–12.

### C.    ERISA Section 204(g) Claim.

The court held that the Complaint did not plausibly allege a claim for an illegal cutback of benefits in violation of Section 204(g) of ERISA, because it did not identify a plan amendment or other change to the Pension Plan Document that reduced Aracich's accrued benefits.  SPA12.  In so ruling, the court held that, by denying Aracich's claim for benefits, the Trustees did not amend the plan documents, but rather applied the terms of the governing plan documents to Aracich's claim.  SPA12–13.  The court also held that Aracich failed to allege that the Trustees' interpretation of the plan documents decreased his accrued benefits. SPA13.

### D.    Breach Of Contract Claim.

The court dismissed Aracich's breach of contract claim as "duplicative of, and thus preempted by, ERISA" because it was based solely on the allegation that the Trustees breached the Funds' governing documents by not paying Aracich his benefits.  SPA15–16.

### E. Fiduciary Breach Claim.

The court dismissed Aracich's fiduciary breach claim because Aracich did not plausibly allege that (i) the Trustees' denial of his benefits was arbitrary and capricious and thus a failure to act in accordance with the governing plan documents; (ii) the Trustees misrepresented the terms of these documents, either directly or in documentation; or (iii) the Trustees failed to provide any specific documents to him or failed to comply with any specific reporting standard. SPA14–15.

This appeal followed.

## <u>SUMMARY OF ARGUMENT</u>

The district court properly concluded that: (i) Aracich's claim for benefits should be dismissed because the Trustees' decision to deny his claim was based on a reasonable construction of the plan documents, and certainly was not arbitrary or capricious; and (ii) Aracich's various other claims for relief had no independent legal foundation. The arguments put forth by Aracich on this appeal do nothing to change this conclusion.

*First*, Aracich has no basis for challenging the court's application of an arbitrary or capricious standard of review to the Trustees' determination because the governing plan documents accord the Trustees the discretion to interpret those documents, and the Trustees exercised that discretion in interpreting what the court

13

found to be an ambiguous term—namely, whether or not Aracich "retired" if he kept working for an employer that ceased contributing to the Pension Fund. In any event, Aracich has no basis for challenging the reasonableness of the Trustees' determination under any standard of review, since that determination was properly based on the terms of the Pension Plan Document, the Pension Fund SPD, and the Trustees' concern that allowing Aracich to commence benefits could jeopardize the Pension Fund's tax-exempt status.

*Second*, Aracich failed to state a viable claim for a violation of Section 510 of ERISA because: (i) he did not allege that the Trustees took an "adverse employment action" against him; and (ii) his allegations that the Trustees acted with the requisite prohibited intent were conclusory, and hence insufficient to state a viable claim.

*Third*, Aracich did not plausibly allege a violation of ERISA's "anti-cutback rule," which provides that a participant's accrued benefit "may not be decreased by an amendment of the plan . . . ." 29 U.S.C. § 1054(g). To plead a violation of this section, a plaintiff must point to an actual plan amendment. But Aracich does not, and cannot, do so here. Nor can he show that denial of his claim decreased his accrued benefits under the Pension Fund.

*Fourth*, Aracich failed to allege a viable breach of contract claim because that claim seeks the same relief as his claim for benefits and, as such, is preempted

14

by ERISA.  In any event, this claim lacks merit for the same reasons as his claim for benefits.

*Fifth*, Aracich failed to allege a viable claim for breach of fiduciary duty under ERISA because, for the reasons previously stated, he did not plausibly plead that the Trustees wrongfully deprived him of benefits, acted contrary to the terms of the governing plan documents, or misrepresented the Funds' terms.  Nor did he identify any documents that the Trustees failed to provide or any reporting standard with which they failed to comply.[4]

## STANDARD OF REVIEW

A complaint must be dismissed under Rule 12(b)(6) if it fails to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This Court reviews *de novo* a district court's dismissal of a

---

[4] In his opposition to the motion to dismiss and on appeal, Aracich also argues (with no factual support) that the Trustees breached their fiduciary duties by failing to monitor other fiduciaries and service providers who allegedly wrongfully denied Aracich's benefits and misrepresented the Pension Fund's terms.  Opening Br. 24. The Court should dismiss this claim because it was not mentioned in the Complaint.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (refusing to consider allegation made for the first time in opposition to motion to dismiss); *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 66–67 (2d Cir. 2006) (refusing to consider new allegations of breach of fiduciary duty that were "absent from the complaint and raised for the first time on appeal").  In any event, this claim should be dismissed because Aracich fails to assert a plausible underlying fiduciary breach claim.  *See, e.g.*, *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir. 2014) (holding that claim for breach of the duty to monitor failed absent viable claim of underlying fiduciary breach).

complaint for failure to state a claim pursuant to Rule 12(b)(6). *See Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013). The dismissal may be affirmed "on any basis supported by the record." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010); *see also Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) ("It is well established that 'we need not affirm for the reasons expressed by the district court but may affirm on any ground supported by the record.'" (citations and alterations omitted)).

## **ARGUMENT**

### I. **The District Court Properly Dismissed Aracich's Claim For Benefits Under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).**

Aracich contends that the district court made several errors in dismissing his claim for benefits. First, he argues that the district court impermissibly relied upon documents other than the Complaint (Opening Br. 14), even though, as the district court observed, the Complaint "relie[d] heavily" on these documents (SPA6 n.3). Second, he argues that the district court incorrectly concluded that the terms "retire" and "separate" in the Pension Plan Document were ambiguous, and as a result improperly applied an arbitrary and capricious standard of review instead of *de novo* review to the Trustees' determination. Opening Br. 16. And finally, he argues that, even assuming a deferential standard of review should apply, the Trustees' determination was arbitrary and capricious, contrary to the district

16

court's holding.  Opening Br. 13–14.  Each argument is without merit and accordingly should be rejected.

### A. The District Court Properly Based Its Decision On Documents Referred To In, And/Or Integral To, The Complaint.

In deciding a motion to dismiss under Rule 12(b)(6), a district court may consider documents referenced in or integral to the Complaint.  *See, e.g.*, *Wilson v. HSBC Bank, USA*, 834 F. App'x 607, 608 (2d Cir. 2020) (observing that courts may consider on a motion to dismiss documents integral to the complaint).  A document is integral to a complaint "where the complaint 'relies heavily upon its terms and effect.'"  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

Without seeking to distinguish these authorities, Aracich contends that the district court improperly relied on documents other than the Complaint, without identifying which documents he claims were improperly considered.  Opening Br. 14.  Even if he had, there would be no basis for such a challenge.  The district court based its decision on the documents forming the administrative record for the claim denial, which are properly considered on a motion to dismiss.  *See Ruderman v. Liberty Mut. Grp., Inc.*, No. 21-817, 2022 WL 244086, at *1 n.1 (2d Cir. Jan. 27, 2022) (summary order) (considering benefits policy and correspondence regarding plaintiff's benefits status as "certainly 'integral' to the complaint given the nature of her claims"); *Saini v. CIGNA Life Ins. Co. of N.Y.*, No. 17-cv-1922, 2018 WL

1959551, at *1 n.1 (S.D.N.Y. Apr. 24, 2018) (considering administrative record attached to defendant's motion to dismiss as integral to the amended complaint or incorporated by reference). In any event, as the district court also expressly noted, the Complaint "relies heavily" on these same documents, rendering them integral to the Complaint. SPA6 & n.3. To the extent the opinion below mentions in passing additional documents arguably not part of the administrative record (*id.*), these documents also were referenced in the Complaint, *see* A37–38.

Accordingly, the district court based its dismissal on documents properly before it on a motion to dismiss.

### B. The District Court Properly Applied An Arbitrary And Capricious Standard Of Review.

Aracich does not dispute that the Pension Plan Document and Welfare Fund SPD grant discretionary authority to the Trustees to interpret these documents. Nor does he deny that, in the ordinary course, where such discretion is conferred, a court may overturn such administrative determinations only if they are found to be arbitrary and capricious. *See Roganti v. Metro Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015); SPA7. Instead, he contends that application of this deferential standard was inappropriate here because that standard applies only for purposes of interpreting ambiguous terms, and, according to Aracich, the term "retire" is not ambiguous.

18

The district court concluded that the term "retire," as used in the Pension Plan Document, is ambiguous, because it could conceivably be interpreted in more than one way. SPA9. Under Aracich's view, a participant "retires," even if he continues working for the same employer, if that employer ceases to contribute to the Pension Fund. But, as discussed further below, there were multiple reasons for concluding that retirement required actual separation from that employment, including: (i) the definition of "retire" in the Pension Plan Document; (ii) the explanation in the Pension Fund SPD that one "must stop working" in order to commence benefits; and (iii) the Trustees' concern that permitting Aracich to commence pension benefits would jeopardize the Pension Fund's tax-qualified status. SPA10. As Defendants-Appellees contended below, these reasons could have led to the conclusion that the Pension Plan Document clearly and unambiguously required separation of employment to retire, in which case Aracich's claim would be rejected without regard to the appropriate standard of review. But if this Court agrees that there was an ambiguity with respect to the meaning of the term "retire," application of the arbitrary and capricious standard of review was warranted.

Accordingly, Aracich's challenge to the court's application of an arbitrary and capricious standard of review must be rejected.

19

### C. The Trustees' Interpretation Of "Retire" Was Not Arbitrary And Capricious.

Under the "highly deferential" arbitrary and capricious standard, a district court should uphold a plan administrator's decision unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 123 (2d Cir. 2022) (describing pleading requirements at motion to dismiss stage) (citation omitted); SPA8; *see also Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 89 (2d Cir. 2021) (defining arbitrary and capricious standard), *cert. denied*, 142 S. Ct. 1120 (2022). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (quotation omitted). Where a plan administrator and claimant "offer rational, though conflicting, interpretations of plan provisions," under the arbitrary and capricious standard of review the administrator's interpretation controls. *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (citation omitted); *see also* SPA8.

The district court properly concluded that there was no basis for overturning the Trustees' determination under this standard. SPA9–11. To the contrary, the court held that it was both "reasonable" and "consistent with the Trustees' obligations to Plan participants" to deny the claim in light of: (i) the Pension Plan

Document; (ii) the Pension Fund SPD; and (iii) the Trustees' obligations to interpret the Pension Plan Document in a manner that would preserve the Pension Fund's tax-qualified status. SPA10–11. Aracich provides no basis for concluding otherwise.

### 1.    The Pension Plan Document And Pension Fund SPD.

The Trustees were required by both the Pension Plan Document and ERISA to interpret the plan document consistently with its terms. SPA10; A251, § 8.7; *see also* 29 U.S.C. § 1104(a)(1)(D) (imposing upon plan fiduciaries an obligation to discharge their duties "solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]"); *Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund* ("*Metzgar I*"), No. 13-cv-85, 2019 WL 1428083, at *11 (W.D.N.Y. Mar. 28, 2019) ("It is basic that the duty of a trustee is 'to administer the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law.'") (quoting Restatement (Third) Trusts § 76 (2007)), *report and recommendation adopted*, No. 13-cv-85, 2020 WL 5939202 (W.D.N.Y. Oct. 7, 2020), *aff'd*, No. 20-3791, 2022 WL 610340 (2d Cir. Mar. 2, 2022) (summary order). The operative language of the Pension Plan Document states that "[t]o be considered retired, a Participant must have separated from Covered Employment." SPA9; A239, § 6.8(a). The Trustees

reasonably construed these terms to mean that Aracich could not "retire" merely by arranging for the Council to cease contributing to the Funds, but rather that Aracich had to cease working for the Council. *See Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund* ("*Metzgar II*"), No. 20-3791, 2022 WL 610340, at *1–2 (2d Cir. Mar. 2, 2022) (summary order) (concluding that fiduciaries' construction of the term "retire" to require participants actually to retire and "separate completely from their prior employment before becoming reemployed" was not arbitrary and capricious); *id.* at *2 ("In common parlance, retire means to leave employment after a period of service.") (quoting *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1358 (7th Cir. 1993)); Merriam-Webster's Dictionary (*retire* is "to withdraw from one's position or occupation: [to] conclude one's working or professional career"), https://www.merriam-webster.com/dictionary/retire (last visited Jan. 5, 2023); *id.* (*separate* is "to set or keep apart" or "to sever contractual relations with"), https://www.merriam-webster.com/dictionary/separate (last visited Jan. 5, 2023).

Any doubts as to the Trustees' interpretation of the Pension Plan Document in this manner were resolved by reference to the Pension Fund SPD. As the district court explained, summary plan descriptions serve as the employee's primary source of information regarding benefits, and employees are entitled to rely on them. SPA10 (quoting *Halberg v. United Behav. Health*, 408 F. Supp. 3d

118, 133 (E.D.N.Y. 2019)).  It therefore was reasonable for the Trustees to consider the SPD in evaluating Aracich's claim and interpreting the Pension Plan Document consistently therewith.  SPA10.  Here, the SPD expressly stated that participants "must stop working" in order to commence pension benefits.  *Id.*; A185.

Rather than dispute the reasonableness of the Trustees' construction of the term "retire," based on the language in the Pension Plan Document and SPD, Aracich contends that the Trustees unreasonably interpreted the term "Contributing Employer" to mean "any employer" instead of an employer contributing to the Pension Fund.  Opening Br. 13–14, 18.  But the issue presented to the Trustees was not whether the Council ceased to be a "Contributing Employer," but rather whether Aracich retired within the meaning of the Pension Plan Document.  And while the Council's cessation of contributions to the Pension Fund was a factor to be considered—a factor that clearly influenced the district court's finding that the meaning of "retired" was ambiguous—it did not render unreasonable the Trustees' ultimate conclusion that Aracich had not "retired," given the other factors that required separation from employment.

In short, it was entirely reasonable for the Trustees to conclude that Aracich did not satisfy the Pension Plan Document's definition of "retire" merely by

arranging for the Council to stop contributing to the Pension Fund, while he continued to work for the Council.

### 2. Construction Of The Plan Consistently With Maintaining Its Tax-Qualified Status.

The reasonableness of the Trustees' interpretation of the Pension Plan Document is confirmed by their consideration of the potential impact of Aracich's proffered interpretation on the Pension Fund's tax-qualified status. Since the Pension Plan Document (and ERISA) requires the Trustees to interpret the plan document consistently with its terms, and those terms include the requirement that the Pension Fund be tax-qualified, the Trustees necessarily were required to interpret any ambiguous provisions of the plan document in a manner that would retain the Pension Fund's tax-qualified status.[5] SPA10; A251, § 8.7; *see also supra* pp. 5, 9.

---

[5] Whether or not a retirement plan is "qualified" has material implications. A "qualified retirement plan," along with its accompanying trust, is authorized under the Internal Revenue Code Section 401(a) to provide certain tax benefits to employers and employees. For example: (i) an employer can claim a tax deduction for the year for which it contributes to the plan; (ii) a plan participant generally does not include in income the value of the retirement benefit until the benefit is actually received; and (iii) income on the assets of the trust is not taxed at the trust level. A plan that fails to satisfy the tax qualification rules may be disqualified. If a plan is disqualified, the employer may in some cases never receive a deduction for its contributions. Further, the participant could be required to include the value of the contribution or benefit in income even if the contribution or benefit is not distributable at that time per the terms of the plan. Finally, the trust would lose its tax exemption. *See* Employee Benefits Committee of the American Bar Association's Labor and Employment Law Section, *Employee Benefits Law,*

As a general rule, to maintain its tax-qualified status a pension plan may pay benefits only after an employee retires from employment or reaches normal retirement age, which the Pension Fund defines as age 65. *See* 29 C.F.R. § 1.401(a)-1(b)(1)(i); *see supra* p. 5. The only allowable exception is where the plan includes provisions that permit benefit distributions to an active employee who has reached age 59½ (an "in-service distribution"). *See* 26 U.S.C. § 401(a)(36)(A) ("Code Section 401(a)") ("A trust forming part of a pension plan shall not be treated as failing to constitute a qualified trust . . . solely *because the plan provides that a distribution may be made . . . to an employee who has attained age 59½ and who is not separated from employment at the time of such distribution*.") (emphasis added); *see also* I.R.S., *Coronavirus-related relief for retirement plans and IRAs questions and answers*, A1 ("[A] plan that does not permit in-service distributions may commence benefit distributions to an individual *only when the individual has a bona fide retirement*.") (emphases added) (citation omitted), https://www.irs.gov/newsroom/coronavirus-related-relief-for-retirementplans-and-iras-questions-and-answers (page last updated Aug. 19, 2022). Since no such provision appears in the Pension Plan Document, a participant who has not reached age 65 must be genuinely "retired" to obtain pension benefits.

---

*Chapter 5. Regulation of Qualified Retirement Income Plans Generally* (current through December 31, 2020, with selected updates through April 30, 2021).

The IRS has issued guidance that is specifically designed to avoid abuse of these rules through sham retirements. The guidance states that a "bona fide" or "legitimate" retirement occurs when an employee severs employment without an expectation of returning to work for his employer. *See* I.R.S. Priv. Ltr Rul. 201147038, 2011 WL 5893533 (Nov. 25, 2011) (opining that "when an employee legitimately retires, he separates from service with the employer. Accordingly, if both the employer and employee know at the time of 'retirement' that the employee will, with reasonabl[e] certainty, continue to perform services for the employer, a termination of employment has not occurred upon 'retirement' and the employee has not legitimately retired" for purposes of Code Section 401(a)).

Consistent with this guidance, and the objective of avoiding an interpretation that would jeopardize the Pension Fund's tax-qualified status, the Trustees acted reasonably in determining that a participant who has not reached normal retirement age can commence pension benefits only after separating from employment. Indeed, their decision was in lockstep with the decision that this Court found not to be arbitrary and capricious in *Metzgar II* (cited *supra*), SPA10; *see Metzgar II*, 2022 WL 610340, at *2. In that case, plaintiffs claimed to be entitled to receive retirement benefits because, even though they remained employed with the same employer, they switched from covered employment to non-covered employment. The Court found it reasonable for the trustees to reject the claim because they

26

"reasonably understood that it was necessary to avoid violating § 401(a) of the Internal Revenue Code . . . thereby jeopardizing the Fund's tax-exempt status." *See also Meakin v. Cal. Field Ironworkers Pension Tr.*, No. 16-cv-7195, 2018 WL 405009, at *6 (N.D. Cal. Jan. 12, 2018) (observing that the IRS "specifically opined that simply changing jobs under the same employer . . . does not qualify as retirement"), *aff'd*, 774 F. App'x 1036 (9th Cir. 2019).

Aracich claims it was reversible error for the court to infer, without a complete record, discovery or joinder of issue, that the Trustees' denial was based on concerns about jeopardizing the Pension Fund's qualified tax status. But he has offered no basis for reopening the administrative record, which clearly establishes that this concern was an influential factor and was properly considered by the district court. *See, e.g.*, *Andrews v. Realogy Corp. Severance Pay Plan for Officers*, No. 13-cv-8210, 2015 WL 736117, at *3, *7 (S.D.N.Y. Feb. 20, 2015) (accepting trustees' statements in claim denial letter about factors it considered and the basis for its analysis of each factor).

Aracich also contends that construing the Pension Plan Document in his favor would not pose a risk to the Pension Fund's qualified status. Opening Br. 16–17. For the reasons stated, this argument simply is wrong as a matter of law. Code Section 401(a), on which he purports to rely, merely provides that a pension plan that *by its terms permits in-service distributions* may provide for such

distributions without running afoul of the tax qualification rules.  *See supra* p. 25.

But here, there are no such terms.

In short, the Trustees had abundant reasons for reasonably concluding that

Aracich had not retired within the meaning of the Pension Plan Document, and

Aracich has provided no basis for finding this reasoning arbitrary and capricious.[6]

## II.    The District Court Properly Dismissed Aracich's ERISA Section 510 <u>Claim.</u>

Section 510 of ERISA states, in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.  To state a claim under this section, a plaintiff must plausibly

allege that the defendant(s) took an adverse *employment* action against him.  *See,*

*e.g.*, *Roe v. Empire Blue Cross Blue Shield*, No. 12-cv-4788, 2014 WL 1760343, at

---

[6] For similar reasons, the district court properly dismissed Aracich's claim for declaratory relief (Count Three), insofar as it requests a declaration that denial of his claim for benefits was arbitrary and capricious and violated ERISA.  SPA11 n.6; *see Frommert v. Conkright*, 206 F. Supp. 2d 435, 441 (W.D.N.Y. 2002), *aff'd in part*, 433 F.3d 254 (2d Cir. 2006) (dismissing request for declaratory judgment "because ERISA provide[d] adequate relief for each plan participant's alleged injury"); *Gorfinkel v. Vayntrub*, No. 13-cv-3093, 2014 WL 4175914, at *6 (E.D.N.Y. Aug. 20, 2014) ("[W]here a declaratory judgment claim is redundant of a primary claim raised by a party to a lawsuit, it is properly dismissed as duplicative.").

*4, *7–8 (S.D.N.Y. May 1, 2014) (collecting cases and dismissing Section 510

claim where plaintiff failed to allege adverse employment action and remained

employed by defendant), *aff'd*, 589 F. App'x 8 (2d Cir. 2014); *Zeuner v. Suntrust*

*Bank Inc.*, 181 F. Supp. 3d 214, 222 (S.D.N.Y. 2016) ("Section 510 is designed to

protect the employment relationship that gives rise to an individual's benefit rights,

not to create an action for wrongfully withheld benefits.") (quotation marks and

citation omitted).  A mere denial of benefits is not an "adverse employment

action," and thus an ERISA Section 510 claim based on the denial of benefits will

not survive a motion to dismiss.  *See Wegmann v. Young Adult Inst., Inc.*, No. 15-

cv-3815, 2016 WL 827780, at *7 (S.D.N.Y. Mar. 2, 2016) (holding that for Section

510 claim to survive a motion to dismiss an employer must "take an adverse

employment action that consequently prevents an employee from attaining her

benefits; mere denial of benefits is not enough"); *Zeuner*, 181 F. Supp. 3d at 222–

23 (dismissing Section 510 claim because it sought the same remedy as plaintiff's

Section 502(a)(1)(B) claim); A29–30.

Additionally, in order to state a viable claim under ERISA Section 510, a

plaintiff must allege that, in taking the adverse employment action, defendants

acted with the requisite intent, *i.e.*, that they "w[ere] at least in part motivated by

the specific intent to engage in activity prohibited by § 510."  SPA11; *see Wickes*

*v. Westfair Elec. Co.*, No. 19-cv-10673, 2021 WL 217318, at *9 (S.D.N.Y. Jan. 20, 2021) (quoting *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988)).

Aracich claims that Defendants-Appellees engaged in a scheme to deprive him of pension and welfare benefits, in violation of ERISA Section 510, by: (i) failing to pay benefits to which he allegedly is entitled under the terms of the Funds; (ii) failing to notify him of a Pension Fund amendment that post-dated his alleged retirement; and (iii) treating him disparately from other similarly situated Fund participants. Opening Br. 21; A4.15–4.16, ¶¶ 47–50. The district court correctly held that these allegations failed to state a claim. SPA11–12. First, Aracich did not allege that he suffered an adverse *employment* action. *See Roe*, 2014 WL 1760343, at *4 (collecting cases and explaining ERISA Section 510's requirement that adverse action pertain to the employment relationship). In fact, since Aracich was not deprived of any benefits to which he was entitled, he did not suffer any adverse action at all. *See Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 388 (S.D.N.Y. 2006) ("[T]o avoid dismissal, [plaintiff] must allege that she has vested rights under an ERISA-covered employee benefit plan and that defendant interfered with her attainment of those rights or retaliated against her for exercising them."). Second, Aracich's allegations of a "scheme," and the underlying components thereof (*supra* pp. 9–10), were entirely conclusory and

thus could not support the requirement that he plead an intent to engage in prohibited conduct. SPA11–12.

Accordingly, there is no basis for overturning the district court's dismissal of Aracich's claim under ERISA Section 510.

## III. The District Court Correctly Held That Aracich Did Not Plausibly Allege A Violation Of The Anti-Cutback Rule.

The district court held that the Complaint did not plausibly allege a violation of ERISA's anti-cutback rule, Section 204(g), because it did not identify an amendment to the Pension Plan Document that reduced Aracich's accrued benefits. SPA12. Section 204(g) provides that a participant's accrued benefit "may not be decreased by an amendment of the plan. . . ." 29 U.S.C. § 1054(g). To state a claim for a violation of this Section, there must be an actual plan amendment. SPA12–13; *see Metzgar I*, 2019 WL 1428083, at *10 (concluding that, under "controlling law on th[is] issue in [the Second] Circuit," a plaintiff must point to an actual plan amendment to support a claim that Section 204(g) was violated). As this Court has observed, "[e]ven broadly interpreted, the word 'amendment' contemplates that the actual terms of the plan changed in some way," or that the plan reserved discretion to deny already-accrued benefits. *Kirkendall v. Haliburton, Inc.*, 707 F.3d 173, 184 (2d Cir. 2009) (quoted in *Metzgar II*, 2022 WL 610340, at *3). A reasonable interpretation, or even re-interpretation, of existing plan terms is thus not an act that could support an anti-cutback claim. *See Metzgar*

31

*II*, 2022 WL 610340, at *3 (holding that reinterpretation of existing plan terms was not a plan amendment).

Here, the district court correctly concluded that this claim must be dismissed because the Complaint did not identify a plan amendment, an actual change in plan terms, or any removal of previously accrued benefits. SPA12 (citing *Metzgar II*, 2022 WL 610340, at *3). Aracich does not dispute this. Instead, he contends, as he did below (A329), that the denial of his benefits amounted to a *de facto* amendment or modification to the term "Contributing Employer." Besides being insufficient to state a claim, the assertion is inaccurate. As the district court found, the Trustees simply applied the existing plan terms to his claims. SPA12–13. The district court also correctly observed that there had been no reduction in Aracich's accrued benefits—whether by amendment or otherwise. SPA13. Aracich is still entitled to the full value of the pension he earned; he just cannot commence receipt of that pension prematurely, before he retires.

On appeal, Aracich still does not identify an actual plan amendment or other change to the terms of the Pension Plan Document. Nor does he provide any basis for concluding that his accrued benefits have been reduced. Instead, he continues to rely on the Supreme Court's decision in *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004). Opening Br. 17–19. But that decision is clearly distinguishable. In *Heinz*, the Supreme Court found that there was an illegal

cutback of benefits where—after plaintiff retired, commenced an early retirement benefit and took a job that at the time was not covered by the plan's definition of "disqualifying employment"—defendants amended the plan to expand the definition of "disqualifying employment," resulting in the suspension of plaintiffs' benefits. *Heinz*, 541 U.S. at 742–45. Here, there was no amendment of any kind impacting the question of whether Aracich retired.

In short, the district court properly dismissed Aracich's anti-cutback claim.

## IV. The District Court Properly Dismissed Aracich's Breach Of Contract Claim As Preempted By ERISA.

The district court's conclusion that Aracich's common law breach of contract claim is preempted by ERISA was consistent with bedrock principles of ERISA preemption. The Supreme Court has held:

> "[A]ny state-law cause of action that duplicates . . . the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted. . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 209–210 (2004). As a result, breach of contract claims based on a failure to pay benefits under an ERISA-governed plan are preempted. *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016).

Independently, Section 514 of ERISA, 29 U.S.C. § 1144, preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." *See* 29 U.S.C. § 1144.[7] A common law claim relates to an ERISA plan where, for example, it seeks to remedy a wrongful denial of benefits under an ERISA plan, and does not attempt to remedy a violation of a legal duty independent of ERISA. *Davila*, 542 U.S. at 214. This Court has accordingly affirmed the dismissal of state law claims, including claims for breach of contract, where the claims were "premised on the . . . denial of benefits under th[e] Plan;" "ma[de] explicit reference to the Plan;" and "would require reference to the Plan in the calculation of any recovery." *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008).

Under either standard, Aracich's state law contract claim is clearly preempted because it is premised solely on the Trustees' denial of benefits. *See Ruderman*, 2022 WL 244086, at *1 (affirming dismissal of breach of contract claim as completely preempted under *Davila*). Aracich explicitly references the Funds as the subject of the alleged breach (A4.19, ¶ 61), and any calculation of the relief sought necessarily requires reference to the Funds. That he titles this cause

---

[7] Although the district court did not reach this argument made in support of the Trustees' motion to dismiss, A33–34, this Court may affirm the order of dismissal on any ground supported by the record. *See supra* p. 16.

of action "ERISA and Common Law Breach of Contract" (A4.18) further

demonstrates that any relief he seeks under state law is inextricably "related to" the

Funds, and, as such, his claim clearly falls within the scope of ERISA's

preemption provision.[8]

Even if it were not preempted, Aracich's breach of contract claim would still

be dismissible for failure to state a viable breach of contract claim. For the reasons

explained in Part I and in the district court's decision (SPA15–16), the Trustees

properly denied Aracich benefits under the terms of the Funds. Accordingly,

whether stated as a claim under ERISA or state law, Aracich's breach of contract

claims are not viable.

## V.   The District Court Properly Dismissed Aracich's Fiduciary Breach Claim.

The district court concluded that Aracich did not plausibly allege that the

Trustees breached any fiduciary duty under ERISA. To state a claim for breach of

fiduciary duty under ERISA, a plaintiff must plausibly allege that: (i) the defendant

was performing a fiduciary function when it engaged in the challenged conduct;

---

[8] Aracich's argument that this "is a federal cause of action based on an ERISA breach of contract claim, 29 U.S.C. § 1132" (Opening Br. 22) makes no sense. The Tenth Circuit case he cites is inapposite, as it does not involve state law claims, and in fact cites to another case for the proposition that state law breach of contract claims are preempted. *See Pratt v. Petroleum Prod. Mgmt., Inc. Emp. Sav. Plan & Tr.*, 920 F.2d 651, 658–59 (10th Cir. 1990) (citing *Straub v. W. Union Tel. Co.*, 851 F.2d 1262, 1264 (10th Cir. 1988)).

(ii) the defendant breached a fiduciary duty; and (iii) plaintiff is entitled to equitable relief.  *In re DeRogatis*, 904 F.3d 174, 190 (2d Cir. 2018); *see also* SPA13–14.  Aracich purports to state such a claim by contending that the Trustees (i) wrongfully denied his claim for benefits; (ii) failed to follow governing plan documents; (iii) misrepresented to him the terms of such documents; and/or (iv) failed to comply with ERISA disclosure and reporting requirements.  Opening Br. 23–24; A4.20 ¶ 64.

The first two contentions comprise Aracich's claim for benefits, and thus do not give rise to an independent claim for breach of fiduciary duty.  SPA15; *see also Frommert v. Conkright*, 433 F.3d 254, 269–70 (2d Cir. 2006) (affirming dismissal of fiduciary breach claim under Section 502(a)(3) of ERISA because it was a claim for calculation of benefits consistent with the terms of the plan, and Section 502(a)(1)(B) provided adequate relief); *Babino v. Gesualdi*, 278 F. Supp. 3d 562, 580–81 (E.D.N.Y. 2017), *aff'd*, 744 F. App'x 30 (2d Cir. 2018) (denying leave to amend complaint to add fiduciary breach claim that was duplicative of claims under Section 502(a)(1)(B)).  Even if they did, they would have to be dismissed for the same reasons that the benefit claim was properly denied, as the district court held.  SPA15.

The third and fourth contentions should be rejected for the reasons stated by the district court; namely: the Complaint and materials considered at the pleading

stage made clear that Aracich was provided with documents explaining the relevant terms of the Funds, and Aracich failed to identify any documents the Trustees failed to provide to him, or any applicable reporting standard with which the Trustees failed to comply. *Id.* Aracich has not refuted and cannot refute these conclusions.[9]

## **CONCLUSION**

For the foregoing reasons, the decision of the district court should be affirmed.

---

[9] The Court should also reject Aracich's contention that the district court erred in dismissing the Complaint without leave to amend, because Aracich's only request for leave to file an amended Complaint was made in passing in the conclusion section of his response to the motion to dismiss. A334–35. Such requests are plainly improper. *See Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 613 (2d Cir. 2020) (affirming dismissal of claims without leave to amend where plaintiffs sought leave to amend in the last sentence of opposition to motion to dismiss and failed to offer "any new factual allegations that they would make" in such amendment); *see also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 282 (8th Cir. 2022) (holding dismissal with prejudice was not abuse of discretion where plaintiffs "never requested leave to amend, much less 'submitted an amended complaint'") (citation omitted).

Dated:  January 9, 2023                    Respectfully submitted,

                                           */s/ Joseph E. Clark*

                                           JOSEPH E. CLARK
                                           MYRON D. RUMELD
                                           SYDNEY L. JULIANO
                                           PROSKAUER ROSE LLP
                                           Eleven Times Square
                                           New York, NY 10036
                                           Tel:  (212) 969-3000
                                           jclark@proskauer.com
                                           mrumeld@proskauer.com
                                           sjuliano@proskauer.com

                                           *Attorneys for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because it contains 8,834 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Microsoft Word 2016 in

Times New Roman, 14-point font.

 Dated:  January 9, 2023                    Respectfully submitted,


                                           */s/ Joseph E. Clark*

                                           JOSEPH E. CLARK
                                           MYRON D. RUMELD
                                           SYDNEY L. JULIANO
                                           PROSKAUER ROSE LLP
                                           Eleven Times Square
                                           New York, NY 10036
                                           Tel:  (212) 969-3000
                                           jclark@proskauer.com
                                           mrumeld@proskauer.com
                                           sjuliano@proskauer.com

                                           *Attorneys for Defendants-Appellees*