# 22-2544-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



MATTHEW ARACICH,

*Plaintiff-Appellant,*

*v.*

THE BOARD OF TRUSTEES OF THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12, THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12, THE BOARD OF TRUSTEES OF THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 PLAN, THE BOARD OF TRUSTEES OF THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, THE HEAT AND FROST INSULATORS LOCAL 12 WELFARE FUND, AL WASSELL, IN HIS CAPACITY AS FUND MANAGER OF THE EMPLOYEE

*(Caption Continued on the Reverse)*

*On Appeal from the United States District Court
for the Southern District of New York*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

TRIVELLA & FORTE, LLP
*Attorneys for Plaintiff-Appellant*
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
914-949-9075

BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12, JOHN DOES 1-10, WHOSE IDENTITIES ARE CURRENTLY UNKNOWN, CONSTITUTING THE TRUSTEES, PLAN ADMINISTRATORS OR FIDUCIARIES OF THE EMPLOYEE BENEFIT FUNDS OF HEAT & FROST INSULATORS LOCAL 12 AND THE PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12 AND THE HEAT AND FROST INS,

*Defendants-Appellees.*

**TABLE OF CONTENTS**

<b>Page</b>

TABLE OF AUTHORITIES ................................................................................ ii

LEGAL ARGUMENT .......................................................................................1

    Mr. Aracich's Interpretation of the Plan is not "Hyper-technical"
    and Represents the Plain Meaning of the Applicable Plan
    Documents, his Reading Plausibly Alleges his Entitlement
    to Retirement and Health Retirement Benefits Under the
    Terms of the Pension and Welfare Funds of Heat and Frost
    Insulators Local 12 Plans ................................................................................1

    Defendants/Appellees' Argument that Providing Mr. Aracich
    his Pension May Impact the Plans' Tax Status is Unavailing ..........................5

    Mr. Aracich's 29 U.S.C. § 1054 Cause of Action is Plausibly
    Alleged ...........................................................................................................7

    Case Law Cited by the Defendants/Appellees' is Inapposite ..........................11

CONCLUSION .................................................................................................14

CERTIFICATE OF COMPLIANCE .................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cent. Laborers' Pension Fund v. Heinz,*
    541 U.S. 739, 745, 124 S. Ct. 2230, 2236, 159 L. Ed. 2d 46
    (2004) ...........................................................................................9

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund,*
    609 F.3d 133, 138 (2d Cir. 2010)..................................................12

*Mayer v. Ringler Assocs. Inc. & Affiliates Long Term Disability Plan,*
    No. 18 CV 2789 (VB), 2020 WL 1467374, at *1
    (S.D.N.Y. Mar. 26, 2020), *aff'd sub nom. Mayer v. Ringler
    Assocs. Inc.*, 9 F.4th 78 (2d Cir. 2021) .....................................11, 12

*McCauley v. First Unum Life Ins. Co.,*
    551 F.3d at 133.............................................................................12

*Meakin v. California Field Ironworkers Pension Tr.,*
    No. 5:16-CV-07195-EJD, 2018 WL 405009, at *1
    (N.D. Cal. Jan. 12, 2018), *aff'd,* 774 F. App'x 1036
    (9th Cir. 2019) .............................................................................13

*Metro. Life Ins. Co. v. Glenn,*
    554 U.S. 105, 115, 128 S. Ct. 2343, 2350, 171 L. Ed. 2d 299
    (2008) ..........................................................................................12

*Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund,*
    No. 13-CV-85V(F), 2018 WL 2744904, at *1
    (W.D.N.Y. June 6, 2018, 13-CV-85V(F)) .............................8, 9, 13

*Miles v. Principal Life Ins. Co.,*
    720 F.3d 472, 485 (2d Cir. 2013)..................................................12

*Soto v. Disney Severance Pay Plan,*
    26 F.4th 114, 117 (2d Cir. 2022)...................................................11

**Statutes**

29 U.S.C. § 1054..................................................................................7

ii

**LEGAL ARGUMENT**

***Mr. Aracich's Interpretation of the Plan is not "Hyper-technical" and Represents the Plain Meaning of the Applicable Plan Documents, his Reading Plausibly Alleges his Entitlement to Retirement and Health Retirement Benefits Under the Terms of the Pension and Welfare Funds of Heat and Frost Insulators Local 12 Plans[1]***

Defendants/Appellees' argument that Mr. Aracich's reading of the Plan documents is "hyper-technical,"[2] misses the mark and is an argument for the summary judgment or trial stage of the litigation and inappropriate in support of a motion to dismiss a pleading at the pleading stage of the litigation. Upon information and belief, there are other employee participants of the Plans that applied for and were provided plan benefits despite continuing to work for the same employer. Mr. Aracich is not working for the same, or any, "Employer," as that term is defined by the plan documents, since the plan documents defined "Employer" as synonymous with "Contributing Employer."[3] Those definitions should be construed against the drafter of the definition, here the Defendants/Appellees, and Mr. Aracich relied upon that definition as a participant of the Plans, to his detriment, estopping the Plans from adopting a different definition. Adopting the Defendants/Appellees' definition of "Employer" renders

---

[1] Hereinafter collectively the "Plans."

[2] *See* Brief for Defendants-Appellees filed January 9, 2023 (ECF No. 24), p. 1. Hereinafter referred to as "Defendants/Appellees Brief, p. {page number}."

[3] *See* Section 1.8 of the Plan (A-204)

1

nugatory the term "Contributing Employer" in Section 1.8 of the Plan (A-204).

There is no reasonable interpretation of "Contributing Employer" that would

include Mr. Aracich's present employer, since this employer does not contribute to

the Plans. Interpreting the word "Contributing" as making contributions to the

Plans is not "hyper-technical" but the plain and only meaning of that word. The

Plans' Trustees interpretation of "Employer" in the plan documents as an employer

not obligated to contribute to the Plans is arbitrary and capricious. There is no

plausible reading of the Plans' language "by an Employer in a bargaining unit for

which the Employer is obligated by its Agreement with the Union to contribute to

the Fund" in Section 1.11 of the Plan (A-205) which includes non-contributing

employers. There is no plausible reading of "'Covered Employment' means

employment by an Employer who must contribute on your behalf to the Pension

Fund" on pages 8-9 of the Pension Fund of Heat and Frost Insulators Local 12 Plan

Summary Plan Description (A-170-171) that would permit "Employer" to be

interpreted as an employer that is not obligated to contribute to the Plans. Since

Section 3.3 of the Pension Fund of Heat and Frost Insulators Local 12 Plan

document establishes a monthly amount of Pension benefit "for Participants who

leave Covered Employment" (A-211) that would include Mr. Aracich.

Defendants/Appellees concede "The Pension Plan Document expressly requires the Trustees to interpret it consistently with its terms."[4] In calculating the service credits Mr. Aracich and other Plan participants earn, Defendants/Appellees concede ""Covered Employment" is defined as employment with an employer that is obligated by a CBA or other agreement with the Union to contribute to the Pension Fund (a "Contributing Employer"). A205, § 1.10."[5]  The Defendants/Appellees will not give a participant service credit for any employer service but only for service with Contributing Employers, *e.g.* Employers contributing to the Plans.

The Defendants/Appellees re-defining "Covered Employment" and "Contributing Employer" when determining when Mr. Aracich and other participants are "retired," as that term is defined by the Plans, is arbitrary and capricious and inconsistent with the Plans' language and prior practice of the Plans. There is no requirement in the Plans' documents that Mr. Aracich and other participants of the Plans must cease all work before they are entitled to Early Retirement Pension and retiree welfare benefits. The Defendants/Appellees, in interpreting the Plans' documents to include a "cease all employment" pension and

---

[4] Defendants/Appellees Brief, p. 5.
[5] Defendants/Appellees Brief, p. 5.

3

retiree welfare benefit requirement, acted arbitrarily and capriciously and not based

on a reasonable construction of the Plans' documentation.

The Defendants/Appellees' May 21, 2021 letter denying Mr. Aracich's

appeal (A-288) contains a party admission by the Defendants/Appellees that, "The

NSBCTC remitted contributions to the Fund on behalf of Mr. Aracich via a

participation agreement until January 1, 2021. Because the NSBCTC has ceased

making contributions to the Fund, Mr. Aracich is no longer working in Covered

Employment as defined by the plan document." The May 21, 2021 letter, where

Defendants/Appellees allege the term "stop working" is "sufficiently clear,"

contradicts the Defendants/Appellees and Court's argument the Plans' language is

"ambiguous,"[6] thereby supporting Mr. Aracich's argument this Court should apply

a *de novo* and not arbitrary and capricious standard of review to the Plans'

determination.

The Defendants/Appellees concede Mr. Aracich at time of retirement

(2/26/21) meets the "the age requirement for both an Early Retirement Pension and

retiree welfare benefits."[7] The Defendants/Appellees do not argue Mr. Aracich

does not also meet the service requirements for both an Early Retirement Pension

and retiree welfare benefits. Mr. Aracich has plausibly alleged in the Complaint he

---

[6] Defendants/Appellees Brief, p. 19.
[7] Defendants/Appellees Brief, p. 7.

meets both the age and service requirements and submitted a claim for pension and

welfare fund benefits.

### *Defendants/Appellees' Argument that Providing Mr. Aracich his Pension May Impact the Plans' Tax Status is Unavailing*

Defendants/Appellees' argument "the Internal Revenue Code does not

permit a qualified pension plan to pay benefits to a participant who is less than 65

years old if that participant has not stopped working for his or her employer, unless

the plan document contains a provision specifically authorizing such payments"[8]

misses the mark. This argument is inappropriate at the pleading stage and is

incorrect, as the Internal Revenue Code does permit a qualified pension plan to pay

benefits to a participant if the participant has met the requirements of the plan.

ERISA requires that vested benefit payment. The Defendants/Appellees' plan

documents contain such a benefit for participants such as Mr. Aracich who cease

Covered Employment as that term is defined in the Plans' documentation.

Defendants/Appellees' citation to I.R.S. Priv. Ltr. Rul. 201147038, 2011

WL 5893533 (Nov. 25, 2011)[9] in support of their denial of Mr. Aracich's benefits

does not support their argument or the denial of benefits. Consideration of that

letter at the pleading stage is inappropriate. Reliance on this IRS letter by the

Defendants/Appellees, even if it occurred, is unreasonable, as there is nothing in

---

[8] Defendants/Appellees Brief, p. 9.
[9] Defendants/Appellees Brief, p. 9.

that letter or any other IRS Ruling that requires a pension fund participant to permanently separate from all employment prior to receiving a pension benefit. This private letter ruling was directed to a particular employer who requested it and is not acceptable authority for the Defendants/Appellees to rely on in the context of denying Mr. Aracich his benefits. The private letter ruling provides, "it may not be used or cited by others as precedent." The private letter ruling applied to the distinguishable facts of the payment of benefits in a rehabilitation plan pursuant to a default schedule and a sham employee retire and rehire the next day with the same benefits. The IRS letter recognizes situations such as the instant case where employees receive benefits and continue to work and authorize their pension payments in that scenario. There is no evidence the payment of Mr. Aracich's benefits will affect the tax status of the Plans. There is no evidence the Plans have sought VCP relief from the IRS based on the language present in the Plans at the time Mr. Aracich retired. The IRS letter provides, in determining whether an employee has terminated employment for retirement purposes under a plan, "facts and circumstances to be considered in making this determination include, but are not limited to, whether the employee continues to be treated as an employee for other purposes (such as continuation of salary and **participation in employee benefit programs**). I.R.S. P.L.R. 201147038 (Nov. 25, 2011) (emphasis added). In the instant action Mr. Aracich, unlike the employees referenced in the Private

6

Letter Ruling, actually did retire from Covered Employment, since his employer no longer contributes to the Plans. Severance from Covered Employment is exactly what is contemplated by the Plans' documents and Internal Revenue Code as "retiring." Adopting Defendants/Appellees' argument leads to the absurd position that Mr. Aracich must retire from all employment whatsoever for the Plans to pay his retirement and still maintain their qualified tax status. Defendants/Appellees cite to no precedent or IRS ruling that prevents a participant from receiving a retirement benefit when the participant works for an employer that does not contribute to the plan. Nor is there any evidence Mr. Aracich intends to return to Covered Employment. Therefore, the tax qualified status of the Defendants/Appellees is a red herring issue and the District Court should not have relied on that argument in granting Defendants/Appellees' motion to dismiss. For the purposes of denial of the motion to dismiss, it was enough for Mr. Aracich to allege Defendants/Appellees employed a new analysis of eligibility of benefits to him that was arbitrary and capricious and in violation of the Plans' documents.

***Mr. Aracich's 29 U.S.C. § 1054 Cause of Action is Plausibly Alleged***

Defendants/Appellees' argument[10] the District Court properly dismissed Mr. Aracich's anti-cutback 29 U.S.C. § 1054 cause of action misses the mark. This action is at the pleading stage. To survive a motion to dismiss Mr. Aracich must

---

[10] Defendants/Appellees Brief, p. 31.

only allege he was entitled to the pension and health benefits at issue and the

benefit was diminished by some plan amendment. Mr. Aracich made these

allegations. *See* Complaint, ¶¶ 1,43,58 (A-4.2, 4.14, 4.18). Mr. Aracich respectfully

submits this Court of Appeals should reverse the District Court and permit him to

engage in discovery as was allowed in the action *Metzgar v. U.A. Plumbers &*

*Steamfitters Loc. No. 22 Pension Fund*, No. 13-CV-85V(F), 2018 WL 2744904, at

*1 (W.D.N.Y. June 6, 2018, 13-CV-85V(F)). In *Metzgar* Plaintiffs sued the Local

22 Pension Fund based on ERISA's anti-cutback provision and the Local 22

Pension Fund's alleged wrongful denial of benefits and breach of fiduciary duty.

The Defendant Local 22 Pension Fund moved to dismiss at the pleading stage. The

District Court denied the Defendant Funds' motion to dismiss Plaintiff's anti-

cutback cause of action and permitted discovery from the Defendant Pension Fund,

holding:

> In *Heinz,* the Supreme Court determined that the Pension Fund's amendment of the Plan to eliminate the exception for employment in a supervisory capacity from the definition of disqualifying employment in a suspension of benefits provision subsequent to Heinz's retirement violated the anti-cutback rule, explaining:
>
> Heinz worked and accrued retirement benefits under a plan with terms allowing him to supplement retirement income by certain employment, and he was being reasonable if he relied on those terms in planning his retirement. The 1998 amendment undercut any such reliance, paying retirement income only if he accepted a substantial curtailment of his opportunity to do the kind of work he knew. We simply do not see how, in any practical sense, this change of terms could not be viewed as shrinking the value of Heinz's pension rights and reducing his promised benefits.

*6 *Id.* at 744–45.

In the instant case, plaintiffs allege that subsequent to their retirement, a new condition was imposed upon their eligibility for retirement, *to wit,* the requirement that plaintiffs intended that their separation from service with any employer be permanent, and that the application of this condition resulted in either the suspension of their retirement benefits or the suspension of their ability to engage in supplemental employment. This is sufficient to plausibly allege the essential elements of an anti-cutback rule, *to wit,* a plan amendment and a reduction in accrued benefits. *Dooley v. American Airlines, Inc.,* 797 F.2d 1447, 1451 (7th Cir., 1986), *cert. denied,* 479 U.S. 1032, 107 S.Ct. 879, 93 L.Ed.2d 833 (1987).

*Metzgar v. U.A. Plumbers & Steamfitters Loc. 22 Pension Fund*, No. 13-CV-0085-A, 2014 WL 1767715, at *5–6 (W.D.N.Y. May 2, 2014). The District Court thereafter permitted Plaintiffs discovery of, *inter alia*, IRS documents and trustee agenda and meeting minutes. *Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*, No. 13-CV-85V(F), 2018 WL 2744904, at *4 (W.D.N.Y. June 6, 2018) (*see* WDNY 13-cv-00085 docket). Mr. Aracich properly pleads his causes of action and is entitled to the same discovery. He is entitled to discovery regarding whether, after he advised the Defendants/Appellees he was retiring, the Defendants/Appellees *de facto* or actually amended the Plans to add a new restriction to Mr. Aracich's accrued pension and health insurance benefits. This type of amendment the United States Supreme Court held violates the anti-cutback rule. *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 745, 124 S. Ct. 2230, 2236, 159 L. Ed. 2d 46 (2004) ("We simply do not see how, in any practical sense, this change of terms could not be viewed as shrinking the value of Heinz's pension

9

rights and reducing his promised benefits"). A statutory violation can also support

a breach of fiduciary duty cause of action, since as explained in Mr. Aracich's

initial brief,[11] an employment relationship is not necessary to allege a Section 510

breach of fiduciary duty cause of action.

Defendants/Appellees' argument "Aracich still does not identify an actual

plan amendment or other change to the terms of the Pension Plan Document"[12]

misses the mark, as the Complaint plausibly alleges a *de facto* or actual plan

amendment and the terms of the amendment are currently in the exclusive

possession of the Defendants/Appellees. Defendants/Appellees' counsel's

allegation "there was no amendment of any kind impacting the question of whether

Aracich retired"[13] should be ignored by this Court of Appeals. Attorney statements

not on personal knowledge are not probative and not appropriate at this pleading

stage of the litigation.

Defendants/Appellees' reliance on the "must stop working" language in the

Summary Plan Description[14](A-185) is misplaced, as pages 8-9 of the Pension

Fund of Heat and Frost Insulators Local 12 Plan Summary Plan Description (A-

170-171) and plan documentation defines "Covered Employment" as requiring a

---

[11] *See* Appellant Brief filed 12/5/22 ECF No. 31, p. 21, *citing* 29 U.S.C. § 1140… It restrains "any person."
[12] Defendants/Appellees Brief, p. 32.
[13] Defendants/Appellees Brief, p. 33.
[14] Defendants/Appellees Brief, p. 23.

contribution to the plans and the "must stop working" cannot be read in a vacuum

but must be read in conjunction with the "Covered Employment" and "retired"

definitions in the plan documentation.

Plaintiffs' arguments for dismissal of the state breach of contract cause of

action lack merit for the reasons stated in Mr. Aracich's initial brief and because

the Complaint plausibly alleges all of the causes of action therein.

### *Case Law Cited by the Defendants/Appellees' is Inapposite*

*Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 117 (2d Cir. 2022), cited

by Defendants/Appellees,[15] is inapposite. In *Soto* the plan denied benefits to a

participant who left work due to a health disability because the disability did not

meet the plan benefit requirement of a "layoff." The Court held this was a

reasonable interpretation of the plan's language. In the instant action the

interpretation of "Contributing Employer" to include employers not contributing to

the Plans is "without reason,"[16] justifying overturning the denial of Mr. Aracich's

benefits.

*Mayer v. Ringler Assocs. Inc. & Affiliates Long Term Disability Plan*, No.

18 CV 2789 (VB), 2020 WL 1467374, at *1 (S.D.N.Y. Mar. 26, 2020), *aff'd sub

nom. Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78 (2d Cir. 2021)[17] is inapposite.

---

[15] Defendants/Appellees Brief, p. 20.
[16] *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 123 (2d Cir. 2022).
[17] Defendants/Appellees Brief, p. 20.

*Mayer* was decided after a bench trial, not at the pleadings stage. In *Mayer* the

District Court determined after discovery and a bench trial a long-term disability

benefit determination was not arbitrary or capricious. The District Court in *Mayer*

did hold:

> Courts "may dial back deference if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest." *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 485 (2d Cir. 2013). A plan administrator that both evaluates and pays benefit claims has an inherent conflict of interest. *McCauley v. First Unum Life Ins. Co.*, 551 F.3d at 133.

*Mayer v. Ringler Assocs. Inc. & Affiliates Long Term Disability Plan*, No. 18 CV

2789 (VB), 2020 WL 1467374, at *9 (S.D.N.Y. Mar. 26, 2020), *aff'd sub*

*nom. Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78 (2d Cir. 2021). In the instant action

the Plans both evaluate and pay Mr. Aracich's benefit. The District Court failed "to

take account of the conflict when determining whether the trustee, substantively or

procedurally, has abused his discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S.

105, 115, 128 S. Ct. 2343, 2350, 171 L. Ed. 2d 299 (2008).

Defendants/Appellees' citation to *Durakovic v. Bldg. Serv. 32 BJ Pension*

*Fund*, 609 F.3d 133, 138 (2d Cir. 2010)[18] misses the mark. *Durakovic* was decided

at the summary judgment stage. The "reasonable mind" standard for which

Defendants/Appellees cite *Durakovic* supports Mr. Aracich's argument, as no

---

[18] Defendants/Appellees Brief, p. 20.

12

"reasonable mind" could interpret the "Contributing Employer" definition in the

Plans' documentation as an employer not contributing to the Plans.

Defendants/Appellees' citation to *Metzgar v. U.A. Plumbers & Steamfitters*

*Loc. No. 22 Pension Fund* ("*Metzgar II*"), No. 20-3791, 2022 WL 610340, at *1–2

(2d Cir. Mar. 2, 2022)[19] misses the mark for the reasons stated in Mr. Aracich's

initial brief.

*Meakin v. California Field Ironworkers Pension Tr.*, No. 5:16-CV-07195-

EJD, 2018 WL 405009, at *1 (N.D. Cal. Jan. 12, 2018), *aff'd,* 774 F. App'x 1036

(9th Cir. 2019), cited by Defendants/Appellees,[20] is inapposite. The District Court

in *Meakin* decided the motion at the summary judgment stage, not the pleading

stage. Unlike the instant action, the plan documents in *Meakin* require a participant

to "withdraw completely and refrain from any employment or activity in the

building and construction industry." *Meakin* 2018 WL 405009, at *2(cleaned up).

In *Meakin* the Plan had also applied to the IRS' Voluntary Compliance

Program("VCP"). The "Covered Employment" definition in the instant action is

distinguishable from the plan language in *Meakin*.

---

[19] Defendants/Appellees Brief, p. 22.
[20] Defendants/Appellees Brief, p. 27.

## **CONCLUSION**

In the Complaint Mr. Aracich plausibly alleged that the Plans are required to pay him pension and health retirement benefits and plausibly alleged he meets all the requirements for these benefits in the plan documentation. Other evidence outside the four corners of the Complaint is necessary for the Court to consider the merits of the allegations. Defendants/Appellees' arguments in the Defendants/Appellees' Brief can be raised at the summary judgment or trial stage of the litigation after Mr. Aracich has been permitted discovery.

This Court of Appeals should, respectfully, reverse the District Court decision granting the Defendants/Appellees' motion to dismiss and allow the action to proceed to the discovery stage so Mr. Aracich can receive his due process right to discovery and evaluate whether there were procedural or substantive defects concerning the Defendants/Appellees' benefit adjudication and evidence of biased benefit adjudication, and plan amendments. Such discovery would include, *inter alia*, whether the Defendants/Appellees engaged the IRS to audit the plan or assess the plan's practices, trustee minutes, the circumstances of other participants receiving benefits and continuing to work, and depositions of Defendants/Appellees' representatives.

Taking all of the well-pled allegations of the Complaint as true, and drawing all reasonable inferences in favor of Mr. Aracich, Mr. Aracich has plausibly pled

14

all of the causes of action in the Complaint and this Court should, respectfully,

reverse the District Court September 19, 2022 Order (SPA-1) and Judgment filed

September 20, 2022 (SPA-17), deny the Defendants/Appellees' motion to dismiss,

and allow the litigation to proceed to the discovery stage, together with such other

relief the Court deems proper.

White Plains, New York
January 22, 2023

                              Respectfully submitted,

                              TRIVELLA & FORTE, LLP

                              */s/ Christopher Smith*
                              *Attorneys for Appellant/Plaintiff*
                              *Matthew Aracich*
                              1311 Mamaroneck Avenue, Ste. 170
                              White Plains, New York 10605
                              (914) 949-9075
                              111csmith111@gmail.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to FRAP 32(g) Christopher Smith, an attorney in good standing to practice before this Court, certifies that this Appellant's Brief contains no more than 7,000 words and otherwise complies with the type-volume limitations in FRAP 32(a)(7). The number of words in this brief, excluding cover page; disclosure statement; table of contents; table of citations; statement regarding oral argument; addendum containing statutes, rules, or regulations; certificates of counsel; signature block; and proof of service; is 3142.

TRIVELLA & FORTE, LLP

*/s/ Christopher Smith*
*Attorneys for Appellant/Plaintiff*
*Matthew Aracich*
1311 Mamaroneck Avenue, Ste. 170
White Plains, New York 10605
(914) 949-9075
111csmith111@gmail.com

16